## Henderson *v.* The State

1. A plea of misnomer should not only state the true name of the accused, but should further allege that he was not known and called by the name under which he was indicted.
2. Section 4549(b) of the code comprehends within its terms not only the actual proprietor, but all persons who in any manner participate in the management of the lottery or in the promotion of the scheme or device for the hazarding of money, or other valuable thing, prohibited by that section. Participation in the illegal design and in the execution of the illegal purpose makes all persons engaged in the criminal enterprise principals.
3. By the terms of section 4545 of the code, a witness in a criminal case arising under any of the sections therein designated, is compellable to testify to any matter of fact within his knowledge in connection with the offense alleged to have been committed, even though his testimony may tend to criminate himself, and he is then entitled to the protection specified in that section; but in a criminal case where a witness, though not compellable so to do, freely and voluntarily testifies to facts tending to criminate himself, his testimony may thereafter be given in evidence against him. Hence where, upon the trial of another for the maintenance of a lottery, a witness so testifies, he is not thereafter entitled to the protection afforded by the section first above mentioned, the maintenance of a lottery not being an offense embraced within any of the sections therein designated.
4. While those portions of the charge of the court to which exception was taken, considered alone, may be subject to slight criticism, yet, viewed in the light of the entire charge, the errors assigned upon them are not well taken. The charge as a whole was sufficiently full and accurate, and in accord with the law. No substantial error was committed by the court; the verdict was supported by the evidence, and the judge properly denied a new trial.

January 28, 1895.

Indictment for keeping policy lottery. Before Judge MacDonell. City court of Savannah. November term, 1894.

Garrard, Meldrim & Newman, for plaintiff in error.

W. W. Fraser, solicitor-general, *contra.*

Lumpkin, Justice.

1. The real name of the accused was William Maie

Henderson.   He was indicted as May Henderson.   He
filed a plea of misnomer, which was stricken.   This plea
set forth what his real name was, but failed to allege
that he was not known and called by the name under
which he was indicted.   Under these circumstances, the
court was right in striking the plea.   *Wilson* v. *State*,
69 *Ga.* 224.

2. In misdemeanors all are principals.   Section 4549(b)
of the code makes it unlawful "for any person or per-
sons, either by themselves, servants, agents, employees,
or others, to keep, maintain, employ, or carry on any
lottery in this State, or other scheme or device for the
hazarding of any money or valuable thing."   It is man-
ifest, we think, under the provisions of this section, that
any person who participates in the management of a
lottery, or in the promotion of any other scheme or de-
vice for the hazarding of money or other valuable thing,
is a principal in the perpetration of the offense thus
prohibited.   It was insisted that no person was indicta-
ble under this section except the proprietor or owner of
the illegal lottery, but this contention is not sound.   The
object of the statute evidently is to prevent the carrying
on of such a lottery by any person, and to make every
one who participates in the design or purpose of carrying
on the same a criminal   The proprietor, in a strict sense,
is the principal in the first degree; and were the offense
a felony, those participating with him in its perpetra-
tion might be either principals in the second degree or
accessories, according to the facts of the particular case.
It is well settled, however, that these distinctions do not
prevail in misdemeanors; and one who is guilty at all is
indictable as a principal.

The correctness of the statement above made, to the
effect that all are principals who participate in the ille-
gal design and in the execution of the illegal purpose
to maintain or carry on a lottery, is not affected by the

fact that section 4549(c) of the code makes indictable certain specific acts which of themselves constitute parts of the business of conducting a lottery. Indeed, this section itself forbids the doing of the acts it prohibits, by any person or persons, either by themselves, servants, employees, agents, or others. It seems to have been the purpose of the act of 1877, from which the above cited sections were taken, to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise.

3. The proviso to the section first above cited, which is in the following words: "Provided, that nothing herein shall affect any of the laws now existing against gaming," recognizes at least a technical, if not a substantial, distinction between the offense prohibited by this section and the offense of gaming proper. It was insisted that where, in a prosecution based upon this section, a witness testified to facts tending to criminate himself, he would be entitled to the protection given by section 4545 of the code, which provides that: "On the trial of any person for offending against sections 4538, 4540, 4541, 4542 and 4544 of this division, any other person who may have played and betted at the same time or table, shall be a competent witness, and be compelled to give evidence; and nothing then said by such witness shall at any time be received or given in evidence against him in any prosecution against the said witness, except on an indictment for perjury in any matter to which he may have testified." The argument was, that a violation of section 4549(b) was really "gaming"; and that as this section became a part of our statute law by the act of 1877 (Acts of 1877, p. 112), the provisions of section 4545 should be extended to cases arising under

that act. We do not think this argument is sound, or leads to the conclusion stated. The offenses prohibited by sections 4538, 4540, 4541, 4542 and 4544 are of a different nature from the offense prohibited by section 4549(b), and it would be straining to hold that the provisions of section 4545 as to the protection of witnesses should be applied to cases arising under the act of 1877, on the idea that the offenses prohibited by this statute are merely acts of "gaming." These offenses could hardly have been in contemplation at all when section 4545 became a part of our criminal code, and we are quite clear that the provisions of that section do not in any view extend to cases prosecuted under the act in question. This being so, the question really before us is, whether or not the testimony of a witness as to facts tending to criminate himself may afterwards be given in evidence against him, when it appears that, though not compellable so to do, he freely and voluntarily made the statements implicating himself. This question certainly can have but one answer. A voluntary confession of guilt, not improperly induced, is always admissible against the party who makes it; and the general rule on this subject is not changed by the fact that the confession happens to be made under oath while the party is being examined as a witness in another trial.

4. We will not comment upon all of the grounds of the motion for a new trial. Some of them allege error in certain portions of the charge of the court. Those portions, considered alone, may perhaps be subject to slight criticism; but taking the charge as a whole, it submitted the case very fairly to the jury. In other grounds of the motion, complaint is made as to the admission of certain evidence, and also as to alleged improper remarks by the solicitor-general. We do not think any of these matters are of sufficient importance to require special notice. On the whole, we are satisfied that no

substantial error was committed by the trial court; and there being ample evidence to sustain the verdict, the judgment denying a new trial will not be disturbed.

*Judgment affirmed.*