## ALFRED V. BOOTH

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 21, 1900.*

1. CONSTITUTIONAL LAW—*power of General Assembly to make police regulations.* The General Assembly of Illinois may, in pursuance of the police power, where not under constitutional prohibition, exercise such restraint upon private rights as may be found necessary and appropriate to promote the health, comfort, safety and welfare of society.

2. SAME—*legislature may make criminal an act not in itself immoral.* By a proper exercise of police power the legislature may expressly prohibit and make criminal the doing of an act which, in the absence of such a law, would constitute a liberty or property right within the meaning of the constitution, even though such act is not immoral in itself.

3. SAME—*law prohibiting option contracts need not apply to all subjects of option.* It is not essential to the constitutionality of an act to prohibit, and make criminal, contracts creating options, that the act should embrace all kinds of property which had usually or commonly been the subject of option dealing.

4. SAME—*act prohibiting grain options is constitutional.* Section 130 of the Criminal Code, which declares grain option contracts to be gambling contracts and the making of them to be a criminal offense, is a valid police regulation, and is not in violation of the constitutional provision against depriving a person of liberty or property without due process of law, nor of the fourteenth amendment to the Federal constitution, guaranteeing all persons the equal protection of the law.

Writ of Error to the °Criminal Court of Cook county; the Hon. A. N. Waterman, Judge, presiding.

Lee D. Mathias, for plaintiff in error:

Section 130 of the Criminal Code, in so far as it provides that "whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity, stock of any railroad or other company, or gold, * * * shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both, and all contracts made in violation of this section shall be considered gambling contracts and shall be void," is in contravention of the constitutions of the State of Illinois and of the United States, which provide that "no person shall be deprived of life, liberty or property without due process of law."

*Bona fide* speculation is not gambling. *Kirkpatrick* v. *Bonsall*, 72 Pa. St. 155.

Option contracts are not immoral, nor were they illegal at the common law. *Schneider* v. *Turner*, 130 Ill. 28; *Watts* v. *Kellar*, 12 U. S. App. 278; 8 Am. & Eng. Ency. of Law, 1011.

Section 130 of the Criminal Code applies to innocent as well as gambling transactions. *Schneider* v. *Turner*, 130 Ill. 28.

It is not for the courts to limit the natural meaning of words, so as to render the statute constitutional. *Trademark cases*, 100 U. S. 98; *State* v. *Gritzner*, 134 Mo. 512.

The right to contract is both a liberty and a property right guaranteed by the constitutions of the State and the United States. *State* v. *Goodwill*, 33 W. Va. 179; *Leep* v. *Railway Co.* 58 Ark. 407; *Holden* v. *Hardy*, 169 U. S. 366; *Allgeyer* v. *Louisiana*, 165 id. 578.

Under pretense of making police regulations the legislature cannot enact laws unnecessary to the preservation of the health and safety of the community, or prohibit that which is harmless in itself. *Railway Co.* v. *Jackson-*

*ville*, 67 Ill. 37; *Wilkinson* v. *Leland*, 2 Pet. 627; Tiedeman on Lim. of Police Power, sec. 1; *State* v. *Noyes*, 46 Me. 189; *Mugler* v. *Kansas*, 123 U. S. 623.

The purpose of the legislature to prohibit gambling could have been accomplished by limiting the prohibition of the statute to contracts which were *per se* gambling. Sedgwick on Const. of Statutes, 411; *Desplaines* v. *Poyer*, 123 Ill. 348.

Section 130 of the Criminal Code, by limiting its effect to "grain or other commodity, stock of any railroad or other company, or gold," is obnoxious to the constitutions of the State of Illinois and of the United States, in that it is class legislation.

The words "other commodity" do not include insurance policies, bonds, mortgages, deeds or real estate. 6 Am. & Eng. Ency. of Law, (2d ed.) 230; *Insurance Co.* v. *State*, 86 Tex. 265.

Had the legislature intended merely to prohibit gambling through the instrumentalities of contracts to give an option, and in the enumeration of those things concerning which optional contracts were inhibited had exhausted the commodities concerning which such gambling contracts were made, then there could be no objection to the statute. Cooley's Const. Lim. (5th ed.) 484, 485; *Bernier* v. *Russell*, 89 Ill. 60; *Strauder* v. *West Virginia*, 100 U. S. 303; *Braceville Coal Co.* v. *People*, 147 Ill. 66; *Frorer* v. *People*, 141 id. 171; *Ramsey* v. *People*, 142 id. 380; *Millett* v. *People*, 117 id. 294; *Ritchie* v. *People*, 155 id. 98; *In re Grice*, 79 Fed. Rep. 627; *Harding* v. *People*, 160 Ill. 459; *State* v. *Gritzner*, 134 Mo. 512.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, ALBERT C. BARNES, and W. E. CAYLOR, of counsel,) for the People:

The fourteenth amendment to the constitution of the United States did not take from the States the police power reserved to them at the time of the adoption of

the constitution. *Slaughter-house cases,* 16 Wall. 36; *Barbier* v. *Connolly,* 113 U. S. 32; *Mugler* v. *Kansas,* 123 id. 623.

The police power is the general power of the government to protect and promote the public welfare, even at the expense of private rights. *Beer Co.* v. *Massachusetts,* 97 U. S. 25; Am. & Eng. Ency. of Law, "Police Power."

The police power of the State extends to the right to restrain or prohibit not only gambling or wagering contracts, but those which may be used as disguises for gambling and have a tendency to injure public interests. Tiedeman on Lim. of Police Power, sec. 99 *a*; *Schneider* v. *Turner,* 130 Ill. 28; *Tenney* v. *Foote,* 4 Ill. App. 594; 95 Ill. 99; *Minnesota Lumber Co.* v. *Coal Co.* 160 id. 98; *Pearce* v. *Foote,* 113 id. 234.

Laws aimed at the suppression of gambling are constitutional. *Crandall* v. *White,* 164 Mass. 160.

Equal protection cannot be said to be denied when the law operates alike upon all persons and property similarly situated. *Barbier* v. *Connolly,* 113 U. S. 32; *Soon Hing case,* id. 709; *Railway Co.* v. *Humes,* 115 id. 513; *Hayes* v. *Missouri,* 120 id. 68; *Railway Co.* v. *Mackey,* 127 id. 205; *Railroad Co.* v. *Herrick,* id. 210; *Walston* v. *Nevin,* 128 id. 578; *Magoun* v. *Bank,* 170 id. 293.

The classification made by the statute need not, in order to be constitutionally valid, embrace all kinds of personal property, whether such kinds of personal property were the usual subjects of option dealing or not. *State* v. *Gritzner,* 134 Mo. 512.

Mr. Chief Justice Boggs delivered the opinion of the court:

The plaintiff in error was convicted and adjudged to pay a fine of $100 under an indictment which charged that he, on the 16th day of August, 1899, in said county of Cook, in the State of Illinois aforesaid, unlawfully did contract in writing with the Weare Commission Company, a corporation, to then and there have to himself, to-wit,

to said Alfred V. Booth, a certain option to buy at a future time, to-wit, on or before the 26th day of August, in the year of our Lord one thousand eight hundred and ninety-nine, a certain commodity, to-wit, grain, to-wit, 10,000 bushels of corn, from the said Weare Commission Company, a corporation as aforesaid, which said contract is in the words and figures as follows, to-wit:

"ALFRED V. BOOTH,
GRAIN AND PROVISION BROKER.
CHICAGO, *Aug. 16, 1899.*

|  | Sep. Corn, | 1899 |
|---|---|---|
| 10 Weare Com. Co. | C 31½ | Paid |

Good till close of change Sat. Aug. 26, 1899.
WEARE C. Co.
J. J. C."

—contrary to the statute and against the peace and dignity of the same People of the State of Illinois. The evidence explained the writing set out in the indictment to constitute an agreement giving defendant the option to buy 10,000 bushels of corn at thirty-one and one-half cents per bushel from the Weare Commission Company at any time within ten days after the 16th day of August, 1899. The allegations of fact set forth in the indictment were fully established by the evidence.

Counsel for plaintiff in error contends it did not appear from the proof the plaintiff in error entered into the contract with any other than the *bona fide* intention to accept the corn if he desired to avail himself of the benefit of the contract, or that he had any intent, when the contract was executed, to accept compliance with the contract merely by way of the payment to him of the difference between the contract price and the market price of the corn at the time of the maturity of the contract, and further contends it appeared from the evidence that the contract was in fact consummated by the actual delivery of the grain to him. Counsel for defendant in error do not question the position thus taken by counsel

for plaintiff in error as to the facts proven on the hearing. Counsel for plaintiff in error admits the facts so charged in the indictment, and established by the evidence in support thereof, justified the conviction under the provisions of section 130 of the Criminal Code, as interpreted by this court in *Schneider* v. *Turner*, 130 Ill. 28, but insists,—first, said section 130 is in contravention of the provision incorporated in the constitution of the United States and also in the constitution of the State of Illinois, that "no person shall be deprived of life, liberty or property without due process of law;" and second, that said section is violative of the provision of section 1 of the fourteenth amendment of the constitution of the United States, which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." We will consider these points in order as made by counsel.

*First*—Liberty and property, as used in said constitutional provisions, include the right to acquire property, and that means and includes the privilege of contracting and making and enforcing contracts. (*Frorer* v. *People*, 141 Ill. 171.) A citizen cannot be deprived of an attribute of property, like the right to make a reasonable contract with reference to property, without "due process of law." Due process of law is a general public law of the land. (*Millett* v. *People*, 117 Ill. 294; *Ritchie* v. *People*, 155 id. 98.) The General Assembly of the State of Illinois possesses full plenary power of legislation, except in so far as its powers are limited by the State or Federal constitution. The State inherently possesses, and the General Assembly may lawfully exercise, such power of restraint upon private rights as may be found to be necessary and appropriate to promote the health, comfort, safety and welfare of society. This power is known as the police power of the State. In the exercise of this power the General Assembly may, by valid enactments,—*i. e.*, "due process of law,"—prohibit all things hurtful to the comfort, safety

and welfare of society, even though the prohibition invade the right of liberty or property of an individual. (18 Am. & Eng. Ency. of Law, 739, 740; *Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191.) An enactment to have that effect and be valid must be an appropriate measure for the promotion of the comfort, safety and welfare of society. It must be, in fact, a police regulation. Courts are authorized to interfere and declare a statute unconstitutional, or not the "law of the land," if it conflicts with the constitutional rights of the individual and does not relate to or is not an appropriate measure for the promotion of the comfort, safety and welfare of society. (*Ritchie* v. *People, supra.*) With the wisdom, policy or necessity for such an enactment courts have nothing to do. But what are the subjects of police powers and what are reasonable regulations are judicial questions, and the courts may declare enactments which, under the guise of the police power, go beyond the great principle of securing the safety or welfare of the public, to be invalid.

Laws for the suppression of all forms of gambling have, without exception, so far as we are advised, been regarded by the courts and law writers as a proper exercise of the police power. This is conceded by counsel for plaintiff in error, but his contention is, the contract for entering into which the plaintiff in error was convicted is neither illegal nor within itself immoral,—is neither void nor voidable under principles of the common law; that this court so declared in *Schneider* v. *Turner, supra,* and that it is not within the power of the State, in virtue of the police power, to deprive a citizen of the right guaranteed by the constitutions of the United States and of the State of Illinois to enter into a contract which is not within itself harmful, immoral, or injurious to the health, morals or safety of the public. The proposition is, a contract which within itself is not harmful, immoral or illegal, and which constitutes a right of property or liberty, within the meaning of those words as employed

186—4

in the organic law of the Federal and State governments, cannot be denounced as illegal in the exercise of the police power of the State. This would be to place a limitation upon the police power which might greatly impair its usefulness and often render its proper exercise entirely futile. It would restrict its operation to declaring that illegal which was already illegal. As we have hereinbefore said, it is not without the power of the General Assembly, in the proper exercise of the police power, by an enactment otherwise valid, to declare that unlawful which was theretofore lawful, even if the act so condemned be an attribute of the right of liberty or property guaranteed to the citizen by the constitutional provisions under consideration. The language of the constitutional provision is so chosen as to recognize the right of the State to deprive a citizen of life, liberty or property by "due process of law." Due process of law is synonymous with "law of the land," hence the law of the land may expressly prohibit and make criminal the doing of an act which, in the absence of such law of the land, would constitute a liberty or property right within the meaning of the constitution, even though such act be not within itself immoral.

In *Magner* v. *People*, 97 Ill. 320, it was urged that certain provisions of the then existing game laws of the State, which declared it unlawful for any one to have in his possession wild fowl or birds of the kind designed to be protected by the statute, which had been lawfully taken or killed in another State, were in contravention of clause 8 of article 1 of the constitution of the United States, which confers upon Congress the power to regulate commerce among the several States. It was there held that the object of the statute was the protection of the game therein mentioned, and that the prohibition of "all possession and sales" of such game would tend to their protection and thereby advance the ends to be secured by the legislation, and the conviction of the plain-

tiff in error, Magner, of the offense of having quail in his possession which had been killed in the State of Kansas and sold by the said Magner in this State was upheld, and it was there said (p. 331): "This is but one among many instances to be found in the law where acts which in and of themselves alone are harmless enough, are condemned because of the facility they otherwise offer for a cover or disguise for the doing of that which is harmful."

The practice of gambling on the market prices of grain and other commodities is universally recognized as a pernicious evil, and that the suppression of such evil is within the proper exercise of the police power has been too frequently declared to be open to discussion. The evil does not consist in contracts for the purchase or sale of grain to be delivered in the future in which the delivery and acceptance of the grain so contracted for is *bona fide* contemplated and intended by the parties, but in contracts by which the parties intend to secure, not the article contracted for, but the right or privilege of receiving the difference between the contract price and the market price of the article. The object to be accomplished by the legislation under consideration is the suppression of contracts of the latter character, which are in truth mere wagers as to the future market price of the article or commodity which is the subject matter of the wager. Clearly a contract which gives to one of the contracting parties a mere privilege to buy corn but does not bind him to accept and pay for it is wanting in the elements of good faith to be found in a contract of purchase and sale where both parties are bound, and offers a more convenient cover and disguise for mere wagers on the price of grain than contracts which create the relation of vendor and vendee. Such contracts are in the nature of wagers, that contracted for being the mere privilege to buy the grain should its market value prove to be greater than the price fixed in the contract for such privilege. The prohibition of the right to enter into con-

tracts which do not contemplate the creation of an obligation on the part of one of the contracting parties to accept and pay for the commodity which is the purported subject matter of the contract, but only to invest him with the option or privilege to demand the other contracting party shall deliver him the grain if he desires to purchase it, tends materially to the suppression of the very evil of gambling in grain options which it was the legislative intent to extirpate, for the reason such evil injuriously affected the welfare and safety of the public. The denial of the right to make such contracts tended directly to advance the end the legislature had in view and was not an inappropriate measure of attack on the evil intended to be eradicated. So far as that point is concerned the act must be deemed a valid law of the land, and as such must be enforced though it infringe in a degree upon the property rights of citizens. To that extent private right must be deemed secondary to the public good.

*Second*—Nor do we think the enactment in question denies to any person the equal protection of the law. Its penalties are directed against all persons and classes of persons who offend against its provisions. It is true it does not prohibit contracts for options to buy or sell, or the purchase or sale on future delivery of all kinds and classes of property; nor was it necessary to the validity of the act it should reach and prohibit all contracts of that character. The remedy need only be as comprehensive as the evil the law designed to remove. In considering as to the propriety of adopting the enactment and as to the necessary scope of the proposed legislation, it is fair to assume it was present in the legislative mind that the proposed prohibition of the right to contract was an infringement upon the rights of property and liberty of the individual, and that it was the legislative design to trench only in the slightest possible degree upon private and individual right, and for that reason the

act was so framed as to restrict the operation thereof to transactions in such kinds and character of property, commodities and securities as had been made the subject of gambling or wagering contracts and out of which grew the evil which threatened the welfare and safety of the public, and to place no restraints upon contracts which, though of like character of those which were prohibited, had not been employed as a means of gambling. Counsel insist contracts to have or give options to buy or sell other articles, commodities or securities than those specified may be lawfully made, but do not suggest that the practice had grown up of contracting to have or give options to be settled merely by way of "differences" in any articles or commodities other than those comprehended within the statute. It is not indispensable, in order to be constitutional, the section should embrace all kinds of personal property, whether such kinds of personal property had usually or commonly been the subject of option dealing or not. It is sufficient if the selection of the articles and property mentioned in the section is based on reasonable and just grounds of difference, and the prohibition comprehends all kinds of property within the relations and circumstances which constitute the distinction, and extends equally to every citizen and all classes of citizens, and denies to no one a privilege which another is permitted under like circumstances to exercise or employ. The prohibition need not embrace all contracts for options to buy or sell, but only all of such contracts as lie at the root of the evil which threatens the public safety and welfare.

We think the enactment the valid law of the land. The judgment is affirmed.  *Judgment affirmed.*