## ARTHUR v. THE STATE.

1. When a citizen is accorded a trial in a court of justice according to the modes of procedure applicable to all cases of a similar kind, it can not be said that he has been denied "due process of law." The demurrer to the indictment in this case does not point out any such denial, and the demurrer on this ground was properly overruled.

2. The demurrer does not point out any reason why the code section on which the indictment is based denies to the accused equal protection of the laws. The General Assembly may constitutionally make classifications in its penal laws, and the same are valid so long as the legislation bears equally on all in the same class. A demurrer which sets out facts not appearing on the face of the pleadings is "speaking" in character, and will not be allowed.

3. There is nothing in the act of Congress, known as "the United States cotton-futures act," which invalidates section 4257 of the Code of 1910.

4. The motion in arrest of judgment is based upon the same grounds as those contained in the demurrer. The reasoning and conclusions reached in this opinion in ruling on the demurrer are equally applicable to the ruling on the motion in arrest.

5. The verdict was authorized by the evidence, and the court did not err in overruling the motion for a new trial.

No. 199. MAY 17, 1917.

Indictment for misdemeanor. Before Judge Hill. Fulton superior court. May 18, 1916.

C. H. Arthur was indicted for a misdemeanor, under section 4257 of the Code of 1910. In the indictment it was charged that the defendant "did establish, maintain, and operate an office and place of business for the purpose of carrying on and engaging in the business commonly called dealing in futures on margin, and did then and there, in said office and place of business established for the purposes aforesaid, maintain and operate and engage in a business commonly called dealing in futures on margin." A general demurrer to the indictment was overruled. On the trial the accused was found guilty, and, before sentence, moved in arrest of judgment, which motion was overruled. He then moved for a new trial, which was denied. He excepted to the three rulings stated.

*Brown & Randolph, Parker & Scott,* and *J. E. Johnson,* for plaintiff in error.

*Eb. T. Williams,* solicitor-general, and *Hugh M. Dorsey,* contra.

GILBERT, J. (After stating the foregoing facts.)

1. The protection which the citizen enjoys as to life, liberty,

and property, under the guaranty of "due process of law," has its origin in the 29th chapter of Magna Charta. This guaranty is found in some form of words in each of the State constitutions. Though there may be found slight verbal differences in the language employed, the expressions are nearly identical, except that the phrase "due process of law" is sometimes used, and sometimes "the law of the land." The meaning is the same in every case. By the fourteenth amendment this guaranty is now incorporated in the constitution of the United States. Cooley on Constitutional Limitations (6th ed.), 430. In Westervelt *v.* Gregg, 12 N. Y. 202, 209 (62 Am. D. 160), Edwards, J., said: "Due process of law undoubtedly means, in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." See Cooley's Con. Lim. 433. The fundamental idea in "due process of law" is that of "notice" and "hearing." It means that the citizen must be afforded a hearing before he is condemned. There must be a hearing first, and judgment can be rendered only after trial. Dartmouth College *v.* Woodward, 4 Wheat. 518 (4 L. ed. 629); McGehee on Due Process of Law, 16; 3 Words & Phrases, 2228, 2232.

The issue of "due process of law" in this case is sought to be raised by demurrer to the indictment. The demurrer can not be said in any sense to raise any question of procedure, or that the defendant was not afforded a fair hearing under the same rules of law as were applied to all others charged with a violation of the penal statutes of the State, before condemnation and sentence. When the citizen is accorded such a trial in a court of justice according to the modes of procedure applicable to such a case, it can not be said that he has been denied "due process of law." Davidson *v.* New Orleans, 96 U. S. 97, 105 (24 L. ed. 616); 8 Cyc. 1081, 1083.

2. Another contention set out in the demurrer is that the statute is null and void, because it offends the fourteenth amendment to the constitution of the United States, which guarantees to every citizen the "equal protection of the laws." "Equal protection of the laws" means equal security under them to every one, under similar terms, in his life, his liberty, his property, and in the pursuit of happiness, and exemption from any greater burdens and charges than such as are equally imposed upon all others un-

der like circumstances. Hence a statute bearing alike on all individuals of each class, or on all districts in like conditions, does not deny the equal protection of the laws; but such classification must not be arbitrary and without reasonable grounds on which it may be based. 8 Cyc. 1059, 1060. Section 4257 of the Code of 1910, on which the indictment is based, reads as follows: "It shall be unlawful for any person, association of persons, or corporation, either as principal or agent, to establish, maintain, or operate an office or other place of business in this State for the purpose of carrying on or engaging in the business commonly called dealing in futures on margins; and any person violating the provisions of this section shall be guilty of a misdemeanor." There is nothing in this section to support the contention that the law does not operate upon all persons alike. The fact that other sections of the code bearing upon the same subject may classify individuals can have no bearing upon the validity of the indictment which has no reference to the latter sections. If these sections were declared void because offensive to the equal-protection clause of the Federal constitution, it would not invalidate the section on which the indictment is based. We do not mean, however, to hold that they are void. It is clearly within the constitutional power of the General Assembly of Georgia to make classifications; and so long as the legislation bears equally upon all in the same class, there is no violation of the Federal constitution.

It is not clear to us what is meant by that portion of the demurrer which says that the law seeks to punish this defendant as the "agent of a citizen of another State," etc. The defendant in this case is indicted as a principal, and the gist of the indictment is, not that he was acting as agent of a non-resident of this State, but that he "did establish and maintain and operate an office and place of business for the purpose of carrying on and engaging in the business commonly called dealing in futures on margin," etc. In misdemeanors all are principals. *Henderson* v. *State,* 95 *Ga.* 326 (22 S. E. 537).

The ground of the demurrer which states that the indictment is bad because it deprives the defendant of "inalienable" rights to make contracts to be performed in other States of the United States is without merit. *Plumb* v. *Christie,* 103 *Ga.* 686, 692 (30 S. E. 759, 42 L. R. A. 181).

The contention in the demurrer that another section of the code, enacted by the General Assembly at the same time and as a part of the same act which includes section 4257, provides that certain enumerated facts, when proved, shall constitute prima facie evidence of guilt, furnished no basis for sustaining the demurrer. The law in regard to this matter is purely a rule of evidence, and has nothing to do with the validity of the indictment, which is substantially in the words of the statute. However, as to whether the evidence rule is unconstitutional, see *Griffin* v. *State,* 142 *Ga.* 636 (83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80). It is not the office of a demurrer to set out facts, and it is a fundamental rule of pleading that a demurrer will only be allowed for defects which appear on the face of the pleadings to which it is opposed; and therefore a demurrer which is founded on matter collateral to the pleading against which it is directed is a "speaking demurrer," and as such should be overruled. *Clark* v. *East Atlanta Land Co.,* 113 *Ga.* 21 (38 S. E. 323); 6 Enc. Pl. & Pr. 297, 298. The power to declare legislative enactments void is one which courts should exercise with great care and caution; and it is the duty of courts to uphold all such, unless they are plainly and palpably unconstitutional. No valid reason being pointed out by the demurrer why the law on which the indictment is based denies to those accused the equal protection of the laws, the demurrer was properly overruled as to this ground.

3. Whenever the Congress of the United States exercises its right of legislation upon a subject-matter, the power of the States to legislate upon the same ceases. There is nothing in the act of Congress, known as the "United States cotton-futures act," approved August 18, 1914, which invalidates section 4257 of the Code of 1910, since the act of Congress has no application and makes no reference to maintaining and operating places for the purpose of carrying on and engaging in the business of dealing in futures on margin, such as is the subject of the indictment in this case.

4. The accused filed a motion in arrest of judgment, based "on all the grounds, collectively and separately, of the general demurrer heretofore filed and insisted upon to the indictment, and by reference each and every ground of the said demurrer is incorporated in this motion, the same as if set forth in hæc verba."

The reasoning and conclusions reached in this opinion in ruling on the demurrer are equally applicable to the motion in arrest.

5. The evidence fully authorized the verdict, and the court did not err in overruling the motion for a new trial, which was based solely on the general grounds. The evidence showed that no actual cotton was received or delivered by the customers of the accused in connection with their transactions, and further showed that they did not contemplate that any delivery would be made. It also showed that it was not usual or customary for the Atlanta customers of the accused to take delivery of the cotton they purchased on the New York Cotton Exchange, or make delivery of the cotton they sold, through the defendant. It also showed that Orvis Brothers & Co., of New York, had a membership in the New York Cotton Exchange, and as such conducted a business on said exchange under its rules, regulations, and by-laws; and that they established the office in Atlanta with the defendant as their agent in charge, paying him a salary and all of the expenses of the office. It is insisted that the transactions which formed the basis of the business done by the Atlanta office were perfectly lawful in New York, and therefore could not constitute a crime in Georgia. The same argument might be advanced that the business of dealing in intoxicating liquors in the State of New York is not unlawful, and therefore that a person engaged in such business in New York might lawfully establish an agency in Georgia, and that this agent would be exempt from prosecution under the penal statutes of this State. If the Louisiana lottery were still in lawful operation in that State, it would scarcely be contended that its proprietors could establish an office in Georgia and be exempt from the penal statutes of this State, denouncing lotteries. The indictment being based upon a statute which prohibits the operation and maintenance of a place for dealing in futures on margin, and the defendant being the person in charge of such office, the jury was authorized to return a verdict of guilty. *Thrower* v. *State,* 117 *Ga.* 753 (5) (45 S. E. 126); *Jones* v. *State,* 120 *Ga.* 185 (47 S. E. 561). The power of the State to legislate against dealing in futures is not limited to cases where such dealings are immoral or gambling in their nature. In Booth *v.* Illinois, 186 Ill. 43 (57 N. E. 798, 50 L. ed. 762, 78 Am. St. R. 229); Id. 184 U. S. 425 (22 Sup. Ct. 425, 46 L. ed. 623), it was contended that the Illi-

nois statute was not directed against gambling contracts, but against mere options to sell or buy at a future time without any settlement between the parties upon the basis of differences, and therefore involving no element of gambling. Mr. Justice Harlan, speaking for the Supreme Court of the United States, said: "Is it true that the legislature is without power to forbid or suppress a particular kind of business, where such business, properly and honestly conducted, may not in itself be immoral? We think not. A calling may not in itself be immoral, and yet the tendency of what is generally and ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils can not be successfully reached unless that calling be actually prohibited, the courts can not interfere, unless, looking through the mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law. Mugler v. Kansas, 123 U. S. 623, 661 [8 Sup. Ct. 273, 31 L. ed. 205]; Minnesota v. Barber, 136 U. S. 313, 320 [10 Sup. Ct. 862, 34 L. ed. 455]; Brimmer v. Rebman, 138 U. S. 78 [11 Sup. Ct. 213, 34 L. ed. 862]; Voight v. Wright, 141 U. S. 62 [11 Sup. Ct. 855, 35 L. ed. 638]." Therefore we can see no just reason why the legislature can not forbid the maintaining of a place of business in this State where persons may deal in futures on margin, although the transaction be completed in another State wherein such dealings are not made unlawful by statute. See Freund on Police Power, §§ 200, 201. See also Gatewood v. North Carolina, 203 U. S. 531 (27 Sup. Ct. 167, 51 L. ed. 305).

*Judgment affirmed. All the Justices concur.*