### 24531. CUTCLIFF *v.* THE STATE.

DECIDED APRIL 3, 1935.

*Joseph D. Lewis, J. O. Ewing, Swift Tyler,* for plaintiff in error.
*John S. McClelland, solicitor, John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GUERRY, J. The plaintiff in error was convicted of the offense of keeping and maintaining a lottery known as a "number game," and with furnishing lottery tickets or numbers and combinations which represented chances in a lottery. The evidence for the State was that on October 16, 1933, there was being operated in Fulton county, Georgia, a lottery known as a "number game." "As to how that number game is operated and what number they are trying to guess or play for, they try to guess what number will come out in the total bond sales for the day in New York,—that is, you leave the millions off to the left and the hundreds off to the right of this number and take the hundred thousands in the middle. They are trying to guess what that number will be for the day. If New York bond sales for the day were 5,150,000, the number that would win that day would be 150. In this lottery some one goes out as the writer." The writer would ask the player what number he wanted to play, he could play as many combinations as he wished, from one penny up to a dollar on any number he chose. If the person guesses the correct number, which is determined by the total stock sales that day in New York, he is paid 500 to one, that is, one penny pays $5, etc. The writer gets 50 cents commission and the successful guesser $4.50, for each penny bet or invested. The writer uses a lottery book, which has a white slip and a yellow duplicate slip made by a carbon paper, and the slips contain a place to indicate the writer's number and date, as well as the number being played by the guesser. The white slip is given the player and the yellow slip retained, and is turned over to what is known as the pick-up man, who delivers it to the lottery headquarters or head man. Then comes the pay off, if any, when the stock sales for that day have been determined. The number played for is made known immediately after the close of the stock exchange, at 2 p. m. No bets are supposed to be taken after that hour.

The officers went, on the 16th of October, 1933, to the defend-

ant's home, which was not in a thickly-settled community of Fulton county, and waited some time, until the defendant drove up in his car. They asked his permission to search his house, and he asked if they had a search warrant, and when answered in the negative, he declined permission. One of the officers then said in the presence of the defendant that he would go and get a search warrant. The remaining officers then stationed themselves about the house in different positions. In just a minute or two a negro was seen in the yard about 15 feet from the back or side of the house on the defendant's premises walking away from the house with a box in his arms which contained several thousand yellow-slip lottery tickets, all dated October 16, 1933, and being the kind of yellow slips or tickets turned in to lottery headquarters or the head man. Those tickets aggregated a large sum of money, approximately $1000. When the negro and the tickets were seized, the defendant came out of the house, no one having told him that the negro was arrested, and asked if they were going to lock him up, and, when told that a case would be made against him, he answered by asking: "What for?" and said that they had not found him with anything. The negro had been seen around the house before the defendant came home, but did not have a box at that time. The time of the arrest was about 2:30 o'clock. The State introduced in evidence two other indictments against the defendant on which he had entered pleas of guilty to the offense of maintaining a lottery in July, 1932, one of the offenses being described as a "number game." Only the general grounds are urged. The evidence was sufficient to warrant a conviction and the court did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*