### 26498. LEWIS *v.* THE STATE.

W. R. Bentley, C. G. Battle, for plaintiff in error.

John A. Boykin, solicitor-general, John S. McClelland, solicitor, J. W. LeCraw, contra.

MacIntyre, J. The defendant Lewis was charged with the offense of "keeping, maintaining, and carrying on a lottery," known as a "number game." Code, § 26-6502. The evidence of the character of the lottery and its method of operation was substantially the same as that set out in Cutcliff v. State, 51 Ga. App. 40 (179 S. E. 568). Carroll, an officer, testified in part that two other officers and himself, on August 31, 1936, "Were riding on Spring Street and saw Henry Lewis and a negro boy riding in a '36 Ford coach, and he went across Nelson crossing Spring and I recognized Henry Lewis; I had come in contact with him several times, and we ran him across Nelson Street on Chapel and he stopped and let this negro boy get out with a sack of tickets, and Bradford and Duncan [officers] ran after him but the boy got away but they got the tickets when he threw them down." The sack of tickets contained about 500 lottery tickets all dated August 31, 1936. They were yellow lottery tickets. (This was important in view of the method of operating of the lottery as testified to by officer Carroll.) As described by the officer, the method followed in the operating of the lottery is that all lottery chances which are sold or represented by the tickets are made in triplicate—white, tissue, and yellow. "After the tickets are written by the writer, he generally takes the yellow tickets and fastens them up in the form of a book with a gem clip, and turns them over to a pick-up or station man. That pick-up man goes around in a car, usually a V-8 Ford, and he has some one riding with him to pick up the tickets when the station man throws the tickets into the car. The pick-up men have to go around to collect these lottery tickets and get them into headquarters by two o'clock. . ." The testimony further shows that when the officers drove up beside the defendant's car, "he backed this car up 50 feet." (The State contended this evidence

tended to show an attempt to get away from the officer.) The defendant contended that the judge erred in admitting testimony by officer Carroll and by solicitor McClelland as to previous transactions in which this defendant had been arrested (in 1934 and 1935), with papers and documents which constituted "pick-up sheets" and "pay-off sheets," with various figures set opposite each writer and other figures indicating commissions etc. In one of the transactions, Mr. McClelland had inspected the documents which the officers had found on the defendant, and had accused him of "paying off," and Lewis answered, "Yes, sir," and Lewis then merely asked if Mr. McClelland was going to take all of the money which the officers had seized (about $800).

■ When we take into consideration all these facts and circumstances, including the previous transaction in which the defendant had operated a like plan or scheme, we think the jury were authorized to find that the defendant knowingly participated in the possession of these 500 lottery tickets, and that if he did his possession was not an innocent one and that he was taking part in possessing them because he was engaged in operating a lottery. We might add that the jury were authorized to find that these other previous transactions tended to illustrate, characterize, and explain the defendant's act while driving the car with a companion who had 500 lottery tickets, and that although this act might be capable of more than one construction, yet they, the jury, could find that this act was not an innocent one. In misdemeanors all persons who aid or abet in the commission of the offense are principals. The evidence, while circumstantial, authorized the defendant's conviction. *Flynn* v. *State,* 52 *Ga. App.* 382 (183 S. E. 194); *Hughes* v. *State,* 52 *Ga. App.* 199 (182 S. E. 807).

■ In another assignment of error the defendant "complains of the admission of evidence which was about other unrelated transactions." The defendant further contends that "the evidence of other transactions is not admissible unless the defendant, in his statement or his evidence, says something which justifies the admission of such evidence." Under the facts of this case the evidence of other transactions, which happen to be punishable as crimes, was admissible to show the plan and scheme of the defendant in the running of the lottery (*Gore* v. *State,* 162 *Ga.* 267, (10), 275, 134 S. E. 36), and to show that the defendant (the

driver of the automobile) knowingly participated in the possession of these 500 lottery tickets, and if he did his possession was not an innocent one, and that he took part in possessing them because he was engaged in the operation of the lottery. The other transactions tended to illustrate, characterize, and explain his act which was capable of more than one construction. *Phillips* v. *State,* 51 *Ga. App.* 675, 678 (181 S. E. 233); *Crawford* v. *State,* 49 *Ga. App.* 801 (176 S. E. 92).

■ In his argument to the jury the solicitor said: "In the operation of this lottery the question comes up as to whether this man is a hard-working, honest man like others of his race, or whether or not he is here robbing these hard-working, honest people through the operation of this lottery." The defendant's counsel made a motion for mistrial "because the solicitor referred to this man as a man who goes out and robs people." The language of the solicitor, to wit, "robbing through the operation of this lottery," showed that he did not refer to robbing by force and intimidation. The testimony of officer Carroll in this case showed that every player of the lottery stands only a thousand-to-one chance to win, when he bets on a certain three-digit number being the winning number for the day. And if the player wins on that thousand-to-one chance he is due to receive only $4.50 for every penny he has bet. So that *more than half of all the money* taken in on the lottery is due to be pure profit for the lottery operators, assuming that they have an average number of winning guesses and "pay off" at 450 to one. Thus, it seem to us, that the argument of the solicitor was merely a figure of speech based upon the evidence in this case. He was not attempting to add to or subtract from the evidence. "Flights of oratory and false logic do not call for mistrials or rebukes. It is the introduction of facts not in evidence that requires the application of such remedies." *Patterson* v. *State,* 124 *Ga.* 408 (52 S. E. 534); *Powell* v. *State,* 179 *Ga.* 401, 411 (176 S. E. 29). In the *Patterson* case, supra, the solicitor-general said in his argument to the jury: "The blood of this dead man calls upon you to punish this man and protect his family and relatives." Of course this was not said by the solicitor-general in a literal sense. There was no evidence that the blood of the dead man was doing any calling out loud, it was merely a figure of speech often used in forensic argument. The

court in the *Patterson* case held that the argument was not cause for a mistrial. See also, in this connection, *Mays* v. *State,* 18 *Ga. App.* 241 (2) (89 S. E. 174); *Taylor* v. *State,* 121 *Ga.* 348 (7) (49 S. E. 303); *Manchester* v. *State,* 171 *Ga.* 121 (7) (155 S. E. 11). In the instant case we think the solicitor was using a figure of speech grounded upon the evidence, and was not attempting to introduce facts not in evidence. The court did not abuse its discretion in not ordering a mistrial.

The judge did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*