29923. GOODRUM *v.* THE STATE.

DECIDED APRIL 29, 1943.

*Russell G. Turner,* for plaintiff in error.

*Lindley W. Camp, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

MACINTYRE, J. By stipulation between counsel for the State and the accused it was agreed that on the date in question the lottery known as the "number game" was in operation in Fulton County, and the manner of its operation was detailed. This is the same lottery described in *Turk* v. *State,* 55 *Ga. App.* 732 (191 S. E. 283), and *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568); and so frequently before this court. The tickets used in the operation of the lottery are written in triplicate by the use of carbon paper, and a book similar to a sales book is used. The book contains 150 pages in all, 50 yellow original tickets which go into headquarters of the company, 50 white pages which are used as copies of the tickets and are given as receipts to the persons playing the numbers, and 50 white tissue pages which are used as the writer's record and remain in the book. In the operation of this lottery chances are sold by "writers" to players, the writer retaining two copies, one of which consists of the original yellow tickets which the writer subsequently delivers to another agent of the lottery, known as the "pick-up" man, by whom the tickets are delivered to the headquarters of the lottery before 2 p. m.

A. W. Lyle, police officer of Atlanta, testified, in part: "It was at North Avenue and Spring Street, and we found this girl on the sidewalk, about 12 o'clock noon, and asked her to get in the car, and she did, and tried to hide something, and had these tickets in her hand . . designated as 'State's Exhibit 1.' These yellow tickets are original lottery tickets, used in the operation of the lottery known as the number game. . . When we found these tickets on the defendant she didn't make any statement but tried to get rid of them or hide them." The defendant made no statement on the trial. The lottery tickets found on the defendant's person were admitted in evidence and sent up by the judge with his answer to the certiorari. There are four of these tickets, and they are original yellow lottery tickets bearing the "writer's" designation "B10." The first ticket shows *thirty-two sales* of separate guesses; the second tickets shows *thirty-four sales;* the third ticket *thirty-two sales;* and the fourth ticket *forty-one sales.*

A lottery is a misdemeanor, and all persons aiding or abetting

(directly or indirectly) in its perpetration are chargeable as principals. The Code, § 26-6502, declares: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." Under this section, any one who participates in the illegal design and in the execution of the illegal purpose of carrying on the lottery is a criminal. It was the purpose of the act "to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise." *Henderson* v. *State*, 95 *Ga.* 326, 328 (22 S. E. 537).

The evidence authorized an inference that the defendant was a "writer," and was on her way to meet the "pick-up man" for the purpose of delivering the original yellow lottery tickets to him for transmission to the headquarters of the lottery. If so, she was participating in carrying on the forbidden enterprise. The evidence authorized the verdict. The judge did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*