## 30154. BRITTON v. THE STATE.

DECIDED SEPTEMBER 15, 1943.

*J. LeRoy Finch, Jackson L. Barwick,* for plaintiff in error.

*Lindley W. Camp, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

MACINTYRE, J. By stipulation between counsel for the State and the defendant it was agreed that on the day the accused was arrested there was in operation in Fulton County, Georgia, a lottery known as the "number game;" and the manner in which the lottery was operated was detailed. This is the same lottery described in *Turk* v. *State,* 55 *Ga. App.* 732 (191 S. E. 283), and *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568), and so frequently before this court.

The Code, § 26-6502, declares: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or

other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." Under this section, any one who participates in the illegal design and in the execution of the illegal purpose of carrying on the lottery is a criminal. It was the purpose of the act "to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise." *Henderson* v. *State*, 95 *Ga.* 326 (2), 328 (22 S. E. 537). According to the manner of playing the lottery known as the "the number game," as herein described, the tickets or chances are sold by persons known as "writers," and the chances thus sold are sent into the headquarters of the lottery by what is known as the "pick-up man." In other words, a "pick-up man" is an agent of the company, and travels by automobile, as a rule, but many times on foot, or by other means of travel, for the purpose of collecting the tickets and money, or tickets, or money, from other agents of the company at various points in the county previously agreed upon between the agents in order to get the numbers selected by the players in the hands of the operators of the lottery before the closing of the New York Stock Exchange, and before the number can possibly be known by those buying chances.

The evidence for the State showed, in part: That an officer went to 321 Frazier Street at 12:50 p. m., and as he went through the front door, he saw Will (the defendant) standing in the back yard, at the back porch, with these thirteen lottery books, which constituted the day's business, clipped together in his hand. The defendant made an attempt to run and the officer "grabbed him. In his hand were the thirteen books of original lottery tickets, thirteen 'writers' included in a package. Those thirteen batches of lottery tickets, designated as State's exhibit A, that I call books, are original lottery books used in the 'number game'. . . As to what the defendant said about these tickets, the only thing he said was that they were his."

The jury was authorized to find that these books were a part of the paraphernalia used in the playing of the lottery game as described in the evidence, and that the defendant participated in the playing of this game in the capacity of a "pick-up man." *Morrow*

v. *State*, 62 *Ga. App.* 718 (9 S. E. 2d, 699). The judge did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*