30362. FOUNTAIN *v.* THE STATE.

DECIDED MAY 25, 1944.

*John R. Strother, Swift Tyler,* for plaintiff in error.

*Lindley W. Camp, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

MacIntyre, J. ■ This writ of error involves the conviction of W. G. Fountain of the operation of a certain species of lottery commonly denominated the "number game." By stipulation between counsel for the State and the defendant it was agreed that on the day the accused was arrested there was in operation in Fulton County, a lottery known as the "number game;" and the manner in which the lottery was operated was detailed. The method of operating the lottery charged was the same as that detailed in *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568), and in *Turk* v. *State,* 55 *Ga. App.* 732 (191 S. E. 283), and so frequently before this court.

Under the Code, § 26-6502, "any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." Thus, anyone who participates in the illegal design and in the execution of the illegal purpose of carrying on the lottery is a criminal. It was the purpose of the act "to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise." *Henderson* v. *State,* 95 *Ga.* 326 (2), 328 (22 S. E. 537).

Officer Densmore, a witness for the State, testified in part, as follows: "Lottery tickets are not always written in original lottery books. You find quite a few [tickets] that are not written in them [the lottery books], but where they use memorandum books [instead of original lottery books]; and all this [paraphernalia] was found, part of it on the person of Mr. Fountain, and the other was found behind the counter there in Mr. Fountain's filling station at Lakewood and McDonough Boulevard. The tickets here are not taken from an original lottery book; none of these are. This is a book that Mr. Fountain uses in his service station, and there are two tickets that correspond here. From my knowledge of the lot-

tery, when they do not use an original lottery book, they can use a book of any type, so long as it has a blank piece of paper where they can put their entries on it and the symbols to recognize the writer, etc. I know the defendant W. G. Fountain. I arrested him about March 9, 1943. . . We went to the filling station, Mr. Fountain's place, at Lakewood Avenue and McDonough Boulevard, and Mr. Fountain was there at the time. On searching the filling station, we found on his person part of these tickets here, and part of them in these memorandum books here, and some in this sale book he has for his filling station; all these lead numbers and lottery numbers, as I explained a few minutes ago. There is also a 'pick-up' record here that was in the filling station where the amounts of money the writers owed to him are entered." (Brackets ours.)

The jury was authorized to find that these books and tickets were a part of the paraphernalia used in the playing and the maintaining of a lottery game, as set out in the accusation and described by the evidence, and that the defendant "did keep, maintain, and operate a lottery." *Turk* v. *State,* supra; *Morrow* v. *State,* 63 *Ga. App.* 264 (10 S. E. 2d, 762) ; *Thomas* v. *State,* 67 *Ga. App.* 311 (20 S. E. 2d, 84) ; *Britton* v. *State,* 69 *Ga. App.* 868 (27 S. E. 2d, 100).

■ Special grounds "E" and "F" present nothing for consideration, because they do not set out in the exact language, or in substance, the evidence objected to, or the grounds of objection made thereto. Under oft-repeated rulings of this court and of the Supreme Court, each special assignment of error must be complete within itself; and generally when so incomplete as to require a reference to the brief of the evidence, or to some other portion of the record, in order to determine what the alleged error was, and whether such error was material, the ground will not be considered by the reviewing court. *McCall* v. *State,* 23 *Ga. App.* 770 (99 S. E. 471) ; *Cathey* v. *State,* 28 *Ga. App.* 666 (112 S. E. 915) ; *Sheppard* v. *State,* 28 *Ga. App.* 735 (2) (113 S. E. 54). "Assignments of error in a petition for certiorari must be specific, and, when based upon rulings of the trial court, must specifically point out the reasons why the rulings are error." *Walker* v. *State,* 30 *Ga. App.* 618 (118 S. E. 478).

194

Special ground "G" presents nothing for consideration because that portion of the charge excepted to is not set out. *Southern Railway Co.* v. *Dantzler,* 99 *Ga.* 323 (2) (25 S. E. 606).

In special ground "H," the defendant claims that the court erred in failing to define and explain reasonable doubt. This ground is controlled adversely to the defendant by the case of *Yopp* v. *State,* 175 *Ga.* 314 (2) (165 S. E. 29), wherein it is said: "The court did not err in failing to give to the jury a definition of reasonable doubt, where there was no written request for such a definition. It was sufficient for the court to charge the jury upon this subject that they must be satisfied by the evidence beyond a reasonable doubt of the defendant's guilt."

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*