### WESTERN & ATLANTIC RAILROAD COMPANY *v.* SMITH.

1. There was no error in overruling the demurrer.

2. Where a railroad crossed a public highway, and alongside the right of way ran a stream over which there was a bridge; and where the county authorities tore down the bridge and erected a new one, and there was evidence that the railroad company then tore away that part of the structure which extended from the new abutment toward the railroad-track; and where one driving an automobile over the crossing, from the side opposite the bridge, ran into a depression between the track and the bridge, of which he had no knowledge: in a suit against the company for damages resulting therefrom, there was no error, as against the defendant, for any of the reasons assigned, in charging the jury, in connection with the general charge, that a railroad company is required by law to use all ordinary and reasonable care and diligence to keep crossings of highways across its tracks and the approaches thereto reasonably safe for public use; that if it did so,

it would not be liable; but that if it failed to do so, it would be liable for damages proximately resulting therefrom to a person passing over such crossing, if the plaintiff by the exercise of ordinary care and diligence could not have avoided the injury.

(a) The charge on this subject was not erroneous on the ground that it should have been qualified by an instruction that the company's duty to repair the crossing arose only after the county authorities had completed their work and had notified the company of that fact, and it had had a reasonable time to make the necessary repairs.

3. The charge on the subject of the duty of one approaching a railroad-crossing over a public highway was not strictly accurate in expression, but it placed upon one approaching the crossing the duty to use ordinary care in a case where the injury on which the suit was based arose, not from any collision or other like happening on the crossing, but from running into a hole or depression in the railroad right of way after crossing the tracks.

4. It was inaccurate to charge as follows: "If he is entitled to recover at all, he would be entitled to recover for the injury sustained, then he would be entitled to recover for lost time resulting from the injury, then for doctor's bills incurred in consequence of the injury, then he would be entitled to recover for damage done the automobile, if any; and if you find his injuries are permanent and by reason of a permanent injury his capacity to labor has been decreased, he would be entitled to recover for his decreased capacity to labor—whatever he has lost by reason of that, and that would be the difference between the labor he could perform just prior to the injury and what he is now able to perform resulting from the injury; the difference would be his decreased capacity to labor."

5. While in the trial of a suit for damages resulting from a personal injury, where the evidence authorizes such a charge, it is the better practice to instruct the jury on the subject of reducing damages under the doctrine of comparative negligence, an omission to do so, in the absence of a proper request therefor, will not necessitate a reversal, where the law on the subject of negligence as it affects the plaintiff's right to recover, and the right of the defendant to have a verdict rendered in his favor, has been substantially and fairly submitted to the jury.

6. There being conflict in the evidence as to the extent of the injury to the plaintiff's person, and whether it was permanent or temporary in character, the court in instructing the jury as to the manner of using the annuity table in 70 *Ga.* 847, which had been introduced in evidence, should have so charged as to inform them that the table should not be used unless they believed that the injury was permanent. The charge given on the subject of the tables, and its context, were not such as to make this clearly appear.

MAY 18, 1916.

Action for damages. Before Judge Fite. Whitfield superior court. July 26, 1915.

*Tye, Peeples & Jordan* and *Maddox, McCamy & Shumate*, for plaintiff in error.

*Lipscomb & Willingham, Nathan Harris*, and *G. G. Glenn*, contra.

LUMPKIN, J. W. C. Smith brought suit against the Western & Atlantic Railroad Company, to recover damages for an injury alleged to have occurred to himself and his automobile while he was attempting to cross the right of way of the defendant on a public highway. There had been a bridge over a creek which ran beside the right of way, and from this to the crossing over the track of the defendant there had been an approach. The county authorities tore down the old bridge and constructed a new one. Between the abutment and the track there was an open space, some feet lower than the track. It was alleged that the plaintiff ran his automobile into this without knowing of the danger; and that the defendant was negligent in leaving the public highway and its right of way between its track and the county bridge in a dangerous condition, in not having a watchman at the crossing to warn the public of this condition, and in not having the road closed, so as to give warning of the danger. A demurrer to the petition was overruled, and exceptions pendente lite were filed. The plaintiff recovered a verdict. A motion for a new trial was overruled, and the defendant excepted.

1. There was no merit in the demurrer, and it was properly overruled.

2. The court charged the jury as follows: "Now a railroad company is required by law to use all ordinary and reasonable care and diligence to keep crossings reasonably safe for public use and all approaches thereto; and if the railroad company in this case did that, then it would not be liable; but if it did not, and the plaintiff could not by the exercise of ordinary care have avoided the injury, then the plaintiff could recover; but if it did not—the railroad was at fault and negligent in not doing so, and the plaintiff by the exercise of ordinary care could have avoided the injury to himself, then he could not recover." By the Civil Code (1910), § 2673, it is declared: "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or em-

bankments, according to the spirit of the road laws." It was contended by counsel for the company that the crossing involved in this case was rendered unsafe by reason of the fact that the county authorities were engaged in building a new bridge, and that the company was under no duty to repair the crossing or render it safe until it was notified by the authorities that the county work was completed and it had had reasonable time thereafter within which to repair the crossing. If it be conceded that the evidence showed that the county authorities had created a dangerous condition by tearing down the old bridge and building a new one over a creek which ran near the defendant's track, but had finished their work, yet it does not follow that, after their work had been completed and nothing remained but for the railroad company to put the crossing and the approach thereto in good repair, an express notice from the authorities to the railroad company that they had completed their work could be declared necessary, as matter of law, before any duty on the part of the company would arise. There was evidence to the effect that the contractor under the county did not tear away the part of the old wooden bridge which was on the right of way of the company, but only "the county's part," and that the company had the part which was on the right of way torn away the week before the injury to the plaintiff, and at the time of its occurrence had not filled in the opening left, but did so during the following week. Under the evidence, the charge complained of did not contain error as against the defendant, requiring a new trial, for the reasons assigned. See, in this connection, *Cleveland* v. *City Council of Augusta*, 102 *Ga.* 233 (29 S. E. 584, 43 L. R. A. 638).

3. By section five of the act of 1910, regulating the operation of automobiles (Acts 1910, pp. 90, 92, Park's Code, § 828 (e)), it is declared: "No person shall operate a machine on any of the highways of this State, as described in this act, at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." Relatively to the provision

in regard to approaching railroad-crossings, the primary object was to guard against dangers such as collision with a train or other vehicles or persons, or things passing over the crossing or near to it. It was not the legislative scheme that the operator of such a machine owed a statutory duty to the railroad company to keep the machine under control and not to cause it to run more than six miles an hour so as to prevent running into a hole or down a declivity, if the company should negligently leave one on its right of way, but not immediately on the crossing of the tracks, by failing to comply with its statutory duty as to keeping the public-road crossing in repair. The speed at which the driver was causing the machine to run, and whether or not he kept it under proper control, in view of the circumstances as disclosed by the evidence, were matters for consideration by the jury in determining whether the plaintiff used ordinary care. It has been held that a part of the act of 1910 was too vague and general to be enforced as a penal statute. *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523); *Empire Life Ins. Co.* v. *Allen,* 141 *Ga.* 413, 415 (81 S. E. 120); *Strickland* v. *Whatley,* 142 *Ga.* 802 (83 S. E. 856).

The charge to which exception is taken was not worded with perfect accuracy. But in so far as it applied to the plaintiff the duty of exercising ordinary care, it was not erroneous.

4. The court charged the jury as follows: "If he is entitled to recover at all, he would be entitled to recover for the injury sustained, then he would be entitled to recover for lost time resulting from the injury, then for doctor's bills incurred in consequence of the injury, then he would be entitled to recover for damage done the automobile, if any; and if you find his injuries are permanent and by reason of a permanent injury his capacity to labor has been decreased, he would be entitled to recover for his decreased capacity to labor—whatever he has lost by reason of that, and that would be the difference between the labor he could perform just prior to the injury and what he is now able to perform resulting from the injury; the difference would be his decreased capacity to labor." The instruction thus was that if the plaintiff was entitled to recover at all, he would be entitled to recover for the injury sustained, "then" for lost time, "then" for doctor's bills, "then" for damages to his automobile, "then" for diminished capacity to labor, which would be the difference between the labor he could per-

form just prior to the injury and that which he "is now able to perform," apparently referring to the time of the trial. The word "then" is sometimes an adverb of time, meaning existing, acting at or belonging to the time mentioned; and is sometimes a conjunction signifying in that case, in consequence, as a consequence, therefore, for this reason. Possibly it was in the latter sense that the court intended to employ the word, and it may have been his purpose to state first the general proposition that the plaintiff, if entitled to recover at all, would be entitled to recover for the injury sustained; and to follow this with a statement of the different elements which might, in certain circumstances, go to make up the aggregate of damages which could be recovered "for the injury sustained." But, if so, it was not clear, and the charge might have had a tendency to cause the jury to allow double damages.

5. It has been held that while it is the better practice, where the evidence authorizes such a charge, to instruct the jury on the subject of reducing or mitigating the damages if the plaintiff is guilty of some contributory negligence, but not enough to bar a recovery, an omission to do so, in the absence of a request therefor, will not necessitate a reversal, where the law on the subject of negligence as it affects the plaintiff's right to recover, and the right of the defendant to have a verdict rendered in his favor, has been substantially and fairly submitted to the jury. *Savannah Electric Co.* v. *Crawford,* 130 *Ga.* 421, 424 (60 S. E. 1056), and citations. In one case it was said: "Where contributory negligence of the plaintiff is not pleaded either as a complete defense or in mitigation of damages, it is not ground for a new trial, in the absence of a written request, that the court omitted from his instructions the principle that if the plaintiff and the defendant are both at fault, the former may recover, but that his damages will be diminished in proportion to the amount of default attributable to him." *Louisville & Nashville R. Co.* v. *Smith,* 136 *Ga.* 455 (71 S. E. 774), and cit. To the writer it seems that it might be urged with much force that, in an action to recover damages for a personal injury, two questions are involved: first, whether the plaintiff is entitled to recover at all, and second, if so, what is the proper measure of damages; that both of these points are directly involved; and that in order to properly instruct the jury as to the measure of damages, if the evidence so authorizes, the rule of

diminishing such damages should be given. It might also be urged, if the defendant denies liability altogether, that for it to plead negligence of the plaintiff to diminish damages would have the effect of causing the jury to believe that it substantially admitted that some damages should be recovered. Nevertheless, the rule above indicated is established by a number of decisions. In the present case it would have been better to give in charge the rule of comparative negligence and its effect in reducing damages. But it can not be held that a reversal will result from a failure to do so, in the absence of any request for such an instruction.

6. Error was assigned because the court failed to charge the jury, with reference to the use of the annuity table introduced by the plaintiff, that they should first determine by the evidence whether the plaintiff's injuries were permanent, and that if they found that these injuries were not permanent they should disregard the annuity table, and not undertake to use it at all; but that if they should conclude that the plaintiff's injuries were of a permanent character, they might use the table in arriving at the amount of the recovery, if there should be one. An examination of the charge contained in the record shows that, after giving the instruction set out in the fourth division of this opinion, the court charged that the jury would ascertain from the evidence how long the plaintiff would probably live, taking into consideration his age, state of health as it appeared from the evidence, the kind of employment in which he was engaged, and other circumstances mentioned, and multiply the years of his expectancy by the fair average yearly value of his decreased capacity to labor; that this would give them the gross sum allowed him on account of decreased capacity to labor; and that they would reduce such sum to its present value at seven per cent. The Carlisle mortality table and an annuity table based upon it, contained in 70 *Ga.* 845, 847, were introduced in evidence. In regard to them the court charged: "Now, some tables have been introduced in evidence, and you can use these tables if you want to, just as you see proper." He then gave certain instructions in regard to the manner of using the tables, if the jury should decide to use them, and added, "You need not use the tables unless you see proper to do so." There was conflict in the evidence as to the extent of the plaintiff's injury, and whether or not it was of a permanent character. There was

no express instruction to the effect that the tables could only be used if the injury to the plaintiff was permanent in character; and we hardly think that the context was such as to make it clear to the jury when it was legitimate to use the tables introduced in evidence, and when not. *Western & Atlantic R. Co.* v. *Knight,* 142 *Ga.* 801 (83 S. E. 943).

Upon a consideration of the entire case, a new trial should be granted.          *Judgment reversed.    All the Justices concur.*