## 30944.  DODYS *v.* THE STATE.

DECIDED NOVEMBER 16, 1945.  REHEARING DENIED DECEMBER 10, 1945.

*George G. Finch,* for plaintiff in error.

*Lindley W. Camp, solicitor, E. E. Andrews, solicitor-general, Durwood T. Pye, E. A. Stephens,* contra.

MacINTYRE, J.   The defendant, Charlie Dodys, was tried by a jury in the criminal court of Fulton County on an indictment in twelve counts, each of which charged that he "did keep, maintain, and operate a lottery known as the number game."   This is the lottery described in *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568), and in *Turk* v. *State,* 55 *Ga. App.* 732 (191 S. E. 283). The jury found the defendant guilty on all the counts, and he filed a petition for certiorari to the superior court.   This petition was denied and he excepted.

■ The defendant, in his certiorari, sought for the first time to raise the question of the disqualification of the judge who presided in the trial of the case. Thus the defendant was seeking to raise a constitutional question for the first time by his certiorari to the superior court. It not appearing from the record that such issues were made in the trial court, they can not be raised for the first time by certiorari in the superior court, and reviewed in this court. "The writ of certiorari lies for the correction of errors committed by inferior judicatories in ruling upon questions made before them; and if, upon the hearing of a writ of certiorari, a question is for the first time raised which was not ruled upon by the court whose judgment is under review, such a question will not be considered." *Meeks* v. *Guckenheimer,* supra; *McDonald* v. *Ludowici, 17 Ga. App.* 524 (3) (87 S. E. 807). "Where it does not appear from the record that issues were made in the trial court, they can not be raised by certiorari in the superior court, and reviewed in this court. *Hood* v. *Griffin,* 113 *Ga.* 190 (38 S. E. 409); *Duren* v. *Thomasville,* 125 *Ga.* 1 (53 S. E. 814); *Hardy* v. *Eatonton,* 128 *Ga.* 27 (57 S. E. 99). The constitutional issues were raised for the first time in a certiorari to the superior court from a judgment in the municipal court. Therefore the superior court could not consider, nor can this court review, these assignments of error." *Bolton* v. *Newnan,* 147 *Ga.* 400 (1, 2) (94 S. E. 236). See also *Edwards* v. *McNair,* 152 *Ga.* 486 (110 S. E. 280).

In the ground of the certiorari seeking to raise the question of the disqualification of the trial judge, the defendant alleges that he did not know of this ground until after the term of the court at which he was convicted had expired or ended. However, the Supreme Court, in *Meeks* v. *Guckenheimer,* supra, states: "Conceding however, the disqualification to have existed, we rule that, no question having been made upon the legal capacity of the trial judge to preside, his incapacity could not be suggested upon a writ of certiorari sued out to review the judgment. If he had been in fact disqualified to preside on the trial, and such fact was unknown to the losing party, and he was thus prevented from invoking a ruling thereon by the trial judge, his remedy was to move to set aside the judgment, and not to reverse it." Such procedure, it will be noted, would have given the trial judge an opportunity to pass upon the question of his disqualification, and

if the defendant was then dissatisfied with the ruling, and if such ruling was erroneous, the law provides a remedy for the correction of such error. See, in this connection, *May* v. *Lee, 57 Ga. App.* 893 (197 S. E. 50). Therefore the superior court could not consider, nor can this court review, this assignment of error. *Miraglia* v. *Bryson,* 152 *Ga.* 828 (3-b) (111 S. E. 655); *South* v. *State,* 72 *Ga. App.* 79 (33 S. E. 2d, 23).

■ The case was tried on November 28, 1944, and the defendant was convicted on all twelve counts of the indictment. Count 12 charged that the defendant, "on the 21st day of July, 1944, with force and arms, did keep, maintain, and operate a lottery known as the number game, for the hazarding of money; the date herein alleged being an essential averment as to this transaction." The defendant contends "that there was no evidence to support this count in the indictment, and that there was no evidence as to the commission of any offense in Fulton County, Georgia, on July 21, 1944, [for] the sole testimony relating to this date was as follows: Grady Brown, a witness for the State, testified as follows: 'My name is Grady Brown and I am in prison at this time (November 28, 1944) at Stonewall. I went there on the 16th day of May, 1944. . . . I got caught again for lottery in a checking station on Whitefoord Avenue in DeKalb County on July 21, 1944.'" The defendant thus contends that "it was a physical impossibility for this negro to have been serving in the chain gang from May 16, 1944, to the date of the trial on this case on November 28, 1944, and yet for him to have been arrested on July 21, 1944."

James Porter testified for the State in part as follows: "I have worked for the defendant, Charlie Dodys, since about 1942. I picked up, picked up lottery and worked in the office. That was a 'bug' office. . . I worked at one checking station, the one on Whitefoord Avenue. . . . I was caught in that raid on Whitefoord Avenue. They tried me or I pleaded guilty in Decatur. The sentence of the court was a fine of $1500. Charlie Dodys paid that fine for me, this defendant. . . While I was working for Charlie Dodys in the lottery business, as I described, I picked up lottery tickets at two or three stations. . . Those tickets were written and picked up in Fulton County, Georgia. . . When I went out to pick up lottery tickets, Charlie Dodys

told me where to pick them up, this defendant did. I said I worked in the headquarters and that I picked up. His business would average $2500 a day. He paid me a straight salary of $45 a week when I got caught. I never picked up any lottery tickets nowhere but in Fulton County, Georgia. . . On the 21st day of July, 1944, I was working in the office down on Whitefoord Avenue. I am the same Jim Porter arrested down there in that raid on Whitefoord Avenue where Charlie Dodys was arrested, myself, Jim Dodys, Tut Bagley and Jim Stewart. That was when they paid a fine for me."

On cross-examination he testified: "I never worked in any place [pick-up station or headquarters] in Fulton County for Charlie. All the testimony I have given you today is about my working for Charlie in DeKalb County on Whitefoord Avenue, and for that offense I pleaded guilty and Charlie pleaded guilty and all the others pleaded guilty and we were all fined and sent to the chain gang and got pretty big fines. That was out in DeKalb County that I worked for him, out in DeKalb County. It has not been so long that that case has been disposed of. I have not been in the chain gang since April but a couple of months. I am in there now and have been there a couple of months. I have a couple more months to serve." On further cross-examination he testified: "I have picked up in Fulton County. As to whether it was for the place in DeKalb County—it was for him when he was in DeKalb County on Whitefoord Avenue. That is what I pleaded guilty to there."

On redirect examination he testified: "All the tickets [necessarily including those checked in on the 21st of July, 1944, which] I testified [were] used in the DeKalb County place were written and picked up in Fulton County, Georgia, the ones I picked up were. We all pleaded guilty to it in DeKalb County when they caught us and paid a fine. I pleaded guilty and paid a fine. Our headquarters was in DeKalb County. That is what I paid the fine for—picking up for Charlie."

Hazel Jones testified in part for the State: That he worked for the defendant in the lottery, and "I reckon these tickets were written and picked up in Fulton County; it was around through town here. . . In July, 1944, I was picking up the 'bug' for Mr. Charlie Dodys and he paid me a salary. . . During the

time I worked for him in 1944, those tickets were written and picked up in Fulton County, Georgia." Grady Brown testified in part for the State, as follows: "I am in prison at this time—in one of the camps in Fulton County, Georgia. I have twelve months to serve down there. . . I am serving in the chain gang on a charge of lottery. . . I have been in the lottery ever since I was a little boy. I started working in the lottery business in 1940 and didn't work in it until 1940. I am twenty years old now and was sixteen years old when I went to work there, but I was still a kid. I went to work first for Mr. Dodys and never had any other job. I worked every day from 1940 up until I got in the chain gang. I have been in the chain gang twice for lottery, both times. I served the first time four months, and the second time I am still serving now. I got twelve months for lottery. I got caught again for lottery in a checking station on Whitefoord Avenue in DeKalb County on July 21, 1944. I was carried to the city court of Decatur. They placed a fine on me there and Charlie Dodys paid it. It was $1000. I didn't see him pay it. . . There wasn't anybody else to pay it but him. I didn't pay it myself. I was working for Mr. Charlie Dodys. The fine of $1000 was paid and I was released."

Moneda Moore, mother of Grady Brown, testified that the defendant came to her and endeavored to pay her to get Grady Brown not to testify against the defendant.

The testimony of Brown, a negro boy, discloses that when he was asked certain dates he replied: "I don't know what month I went there. I can't calculate much good on my fingers." At another time he replied: "I just said I worked for him [the defendant] every day [since 1940] until I went to the chain gang in 1943 or 1944." Irrespective of whether the jury believed that the witness was an ignorant negro boy, who did not keep up with dates and became confused on the witness stand as to the date he went to the chain gang, and stated incorrectly a date which would have made the time the crime alleged in this count to have been committed, to wit, July 21, 1944, a date when the witness was on the chain gang in Fulton County, or whether the jury believed that the witness testified correctly when he stated that he was a participant in the lottery of the defendant by being a "pickup man" for the defendant in Fulton County, that he delivered the

tickets thus picked up in Fulton County to the checking station on Whitefoord Avenue in the adjoining County of DeKalb where the witness was arrested, that he was fined in DeKalb County, and the defendant, without saying anything to the witness, paid the witness's fine—the jury were authorized to find, from the testimony of the witnesses other than Brown, that the defendant was operating a lottery on July 21, 1944, in Fulton County, for his operatives were selling lottery chances on the "bug" for cash in Fulton County, on July 21, 1944; that thereafter, on the same date, to wit, July 21, 1944, he carried them to a checking station on Whitefoord Avenue in DeKalb County; that the defendant was engaged in the lottery, not only in DeKalb County by maintaining a checking station there, but was also operating a lottery in Fulton County where the sale of the lottery chances was completed by the operatives of the defendant.  See *Lunsford* v. *State,* 60 *Ga. App.* 537 (4 S. E. 112).

If the defendant here was guilty at all, he was guilty as a principal in the first degree, because, in misdemeanors, there are no such things as principals in the second degree, or accessories. *Lewis* v. *State,* 33 *Ga.* 131.  Thus the defendant could be convicted on proof that he, directly and personally, did any of the several acts entering into the conduct of such lottery business, a misdemeanor, or that he procured, counseled, commanded, aided, or abetted the criminal transaction of another who was the direct and immediate actor. · *Thomas* v. *State,* 65 *Ga. App.* 749 (16 S. E. 2d, 447).  The Code, § 26-6502, declares: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor."  Under this section, anyone who participates in the illegal design and in the execution of the illegal purpose of carrying on the lottery is a criminal.  It was the purpose of the act "to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise." *Henderson* v. *State,* 95 *Ga.* 326 (22 S. E. 537).  "A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or wit-

nesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Reaves* v. *Columbus Electric &c. Co.*, supra. "The credibility of this witness was attacked by every means known to the law, including contradiction by another witness, evidence of bad character, and his own previous affidavit to a written report of the facts at variance with his testimony at the trial; yet the jury, if not themselves corrupt, must have believed him, for they found for the plaintiff; and, the court below having approved their finding, this court is constrained by law to acquiesce. Relatively to the revising powers of this court, the jury are the exclusive judges of the credibility of the witnesses. The law provides for setting aside judgments obtained by perjury after conviction of that offense." *Rome Railroad Co.* v. *Barnett*, 94 *Ga.* 446 (5) (20 S. E. 355). This court has said: "The whole question of the credibility of witnesses is wisely left to the jury under any and all circumstances; and, though Ananias and Sapphira spoke again, the law would not strike them dead, but would leave their testimony to be weighed and accepted or rejected by the jury." *Brown* v. *State*, 10 *Ga. App.* 50, 56 (72 S. E. 537). "Relatively to the revising power of this court, the jury are the exclusive judges of the credibility of witnesses." *Rome Railroad Co.* v. *Barnett*, supra. The evidence for the State, if believed, was sufficient to support the verdict finding the defendant guilty under count 12 of the indictment.

■ The plaintiff in error states in his brief that he "insists on each and every assignment of error in the petition for certiorari as constituting sufficient grounds for the granting of a new trial, and, as a result, demands that the petition for certiorari be sanctioned." However, he argues and discusses only those assignments of error in which he contends that the judge was disqualified, and that there was no evidence to sustain the 12th count of the indictment. We have, as stated above, held that these assignments of error are not meritorious.

We have further examined the assignments of error not argued and discussed in the defendant's brief, and none of them discloses reversible error for the reasons assigned.

The evidence authorized a verdict of guilty as charged on all twelve counts of the indictment.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*