43884.   HARRIS et al. v. SMITH et al.

SUBMITTED SEPTEMBER 6, 1968—DECIDED FEBRUARY 3, 1969—REHEARING DENIED MARCH 6, 1969—

*Payne, Barlow & Green, William O. Green, Jr., Richard C. Alderman,* for appellants.

*Long, Weinberg & Ansley, Ben L. Weinberg, Jr., Charles E. Walker,* for appellees.

HALL, Judge. Knowledge of the driver's incompetency is an essential element of the rule which holds an owner liable for furnishing his automobile to an incompetent driver and such knowledge must be actual rather than constructive. *Hines v. Bell*, 104 Ga. App. 76 (3b) (120 SE2d 892); *Roebuck v. Payne*, 109 Ga. App. 525 (136 SE2d 399); *Lee v. Swann*, 111 Ga. App. 88 (140 SE2d 562); *Saunders v. Vikers*, 116 Ga. App. 733 (158 SE2d 324).

On the issue of the defendants' knowledge of the driver's incompetency the following showing was made by the plaintiff in opposition to the defendants' motion for summary judgment: The defendants' son was born in 1941. His mother testified that she knew of a wreck he had in 1955 (when he would have been age 14) and in the mother's opinion it was not her son's fault. The son left home in 1963 when he married. During the 22 months from November 1960 to September 1962 the son (when he was 19 to 21 years of age) had 11 traffic offenses, as shown by the records of the Municipal Court and the Traffic Court of the City of Atlanta. For these offenses he received various sentences of 4, 6, or 8 months, suspended upon payment of fines, and suspensions of his driver's license. The fines assessed totaled over $700. Four of these penalties are shown to be for speeding, another for "red light," one for "an accident," six for driving with license revoked. The same records show that in 1965 before the incident on October 23 giving rise to this suit, the son had two violations for which he was fined, for "stop sign" and "improper backing, accident."

Answering questions as to whether she had had trouble with her son and whether he had ever been arrested before, the mother testified, "Well, maybe for a little minor—yeah he had been arrested before because he had worked on a car here and drove it down there into Johnson Road and because he didn't have the muffler on it, why, they arrested him there." Again, in answer to a question whether she had ever heard of her son getting any traffic tickets, the mother testified, "I told you that he got some for fixing cars and not having mufflers and things on." Thereafter she testified that she didn't know of any more than one. A letter to the defendants from their liability insurer on

December 20, 1965, states: "As you are aware, your son was excluded from the . . . policy on January 11, 1962, and has been excluded on each renewal thereafter. The insurance company did not wish to provide coverage because of his previous driving record." The defendants admitted receipt of this letter, but denied that their son's driving record was the reason for his exclusion from coverage and denied knowledge of his driving record.

We hold there was sufficient circumstantial evidence to authorize a jury to draw the inference that the defendants had actual knowledge that their son was an incompetent driver. The defendants denied on deposition that they had any knowledge of their son's driving propensities. Does their testimony destroy as a matter of law the above circumstantial evidence and prevent the jury from determining whether or not their testimony is true or false? The answer is found in the recent Supreme Court case of *McCurry v. Bailey,* 224 Ga. 318 (162 SE2d 9), a summary judgment case involving a similar issue on the credibility of a defendant's sworn testimony. In considering the positive sworn testimony of the defendant in that case and the circumstantial evidence, the Supreme Court held: " 'Circumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict, *when* by positive and uncontradicted testimony of *unimpeached* witnesses, which was *perfectly consistent with the circumstantial evidence,* relied on by the plaintiff it was affirmatively shown that no such fact existed.' . . The very 'guts' of the question is on the one hand unquestionably the inert body of the defendant in the driver's position, and on the other the defendant who is interested in the outcome testifying that the deceased was driving. Was he telling the truth? Circumstances say not. Does this contradiction yield to determination as a matter of law, or rather does it call for a jury verdict of men who are acquainted with the facts of life? We unhesitatingly hold that such a conflict is beyond the reach of mere judicial decision and can be resolved only in the American way—by the verdict of twelve jurors. The only human resolution of such conflicts can, under our jurisprudence, be

made by a jury who alone can impeach, who alone can judge credibility, and who alone can decide issues of fact. They might in their wisdom growing out of human experience lawfully say the physical fact as to the position of the defendant's body under the steering wheel outweighs his contrary testimony as an interested party, or contrariwise. Judges are not under our Constitution invested with authority to usurp this power which is reserved by law to the jury." See also *Young v. Reese,* 119 Ga. App. 179 (2).

Under the *McCurry* ruling, it cannot be said as a *matter of law* that the sworn testimony of the defendant parents is, in the words of our Supreme Court, *"perfectly consistent with the circumstantial evidence."* Therefore, it is for the jury rather than the trial court to judge the credibility of the defendants' statements that they had no actual knowledge of *their son's* previous reckless driving record.

The trial court erred in granting the defendants' motion for summary judgment.

*Judgment reversed. Bell, P. J., Jordan, P. J., Pannell and Deen, JJ., concur. Felton, C. J., Eberhardt, Quillian and Whitman, JJ., dissent.*

QUILLIAN, Judge, dissenting. The question here involved is whether the trial judge correctly granted the defendant's motion for summary judgment because the evidence conclusively showed that the defendants had no actual knowledge of any past reckless driving on the part of Jerry Smith or any knowledge of past conduct sufficient to support an action against him based on the theory of negligent entrustment.

In the instant case the plaintiff introduced records showing that Jerry Smith had been convicted eleven times for various offenses while he was living with his parents up to 1963. However, both parents positively denied that they had any knowledge of Jerry Smith's propensity for reckless driving. There was no direct evidence showing that the defendants knew, other than as to one transaction, of Jerry Smith's driving record or were informed, prior to the collision here involved, as to why he was not insured under the policy.

In this regard, according to the testimony of Mr. Wilcox,

the insurance agent, the policy itself merely stated: " 'It is agreed that such insurance as is afforded by the policy for bodily injury liability, for property damage liability, for automobile medical payments and for collision or upset does not apply to accidents or loss occurring while any automobile is being personally driven by,' and then the name 'Jerry Smith' is inserted." He also testified that there was a specific notation on the front of the policy which provided: "Never include coverage for the boy . . . has own car." The letter relative to why Jerry Smith was excluded from coverage on the defendants' policy, to which the majority opinion makes reference, was written after the accident in question occurred. Being after the fact, it had no evidentiary value.

"However difficult it may have been to the plaintiffs when faced with the owner's statement of his limited knowledge of a single incident of recklessness, it was incumbent upon them to show in opposing the motions for summary judgment that he had actual knowledge of a pattern of reckless driving or facts from which such knowledge could be reasonably inferred in order to preserve the issue for jury determination." *Saunders v. Vickers*, 116 Ga. App. 733, 736, supra. "While it may be difficult to prove the existence of actual knowledge on the part of one who denies it (because in such case direct evidence is not attainable, unless he admits it), nevertheless, even actual knowledge can be demonstrated by the proof of circumstances which will admit of no other reasonable conclusion than that the party who asserts his ignorance of a given fact actually knew it, and that his denial is untrue." *Roebuck v. Payne*, 109 Ga. App. 525 (3) (136 SE2d 399).

There are federal cases holding that the fact a witness is a party or interested in the result of the case, along with other circumstances, is sufficient to raise a question as to his credibility and require the submission of such issue to a jury. See Sartor v. Arkansas Natural Gas Corp., 321 U. S. 620 (64 SC 724, 88 LE 967), using this reasoning as a basis for denying summary judgment. However, since a motion for summary judgment is analogous to a motion for directed verdict, we consider the Georgia rule in determining whether the evidence demands a verdict or not.

This rule finds comprehensive explanation in *Lankford v. Holton*, 187 Ga. 94, 102 (200 SE 243) which holds: "Direct and positive testimony, as distinguished from testimony circumstantial, opinionative, or actually negative in character, which is given by an unimpeached witness as to the existence of a fact apparently within his own knowledge, which is not in itself incredible, impossible, or inherently improbable, and which is not contradicted directly or by proof of facts or circumstances that could be taken as incompatible with such testimony, cannot be arbitrarily rejected by a jury or other trior of the facts upon the mere surmise that it perhaps might not be in accord with the truth," and in *Myers v. Phillips*, 197 Ga. 536 (4) (29 SE2d 700).

As is reiterated in cases explaining this rule, where there are facts or circumstances which tend to contradict, or are inconsistent with, the witness's direct testimony or such testimony is inherently improbable, then the witness's credibility is for the jury and they may disregard such testimony. *Pantone v. Pantone*, 206 Ga. 305, 308 (57 SE2d 77); *Williams v. Paul F. Beich Co.*, 74 Ga. App. 429, 432 (40 SE2d 92); *Nicholson v. State*, 112 Ga. App. 306, 307 (145 SE2d 282).

Under the facts of this case we should not hold as a matter of law that the circumstances were such as to admit of no other reasonable conclusion than the parties asserting ignorance of the fact actually knew such fact and their denials were untrue. The fact that Jerry Smith's driving record was studded with convictions, standing alone, would not give rise to an inference that the defendants had knowledge of such record so as to create an issue for the determination of a jury. Our own experience tells us that when a boy has committed an infraction he will, if possible, keep that information from his parents; they are the last who are likely to learn of it. If he could arrange to dispose of the traffic charges without seeking aid from his parents, it was the most likely and natural course for the boy to follow. Hence, their positive testimony that they did not have any knowledge of the occasions does not conflict with any circumstantial evidence to the contrary.

*McCurry v. Bailey*, 224 Ga. 318, supra, does not conflict with

this view, since it is authority for the proposition that where circumstances *do* conflict with positive testimony a jury question is presented.

For the foregoing reasons I dissent.

I am authorized to state that Chief Judge Felton and Judges Eberhardt and Whitman concur in this dissent.

EBERHARDT, Judge, dissenting. I find it impossible to reconcile the majority opinion with the holdings in *NuGrape Bottling Co. v. Knott,* 47 Ga. App. 539 (171 SE 151); *Crisp v. Wright,* 56 Ga. App. 338 (129 SE 390); *Hines v. Bell,* 104 Ga. App. 76 (3), supra; *Marques v. Ross,* 105 Ga. App. 133, 138 (123 SE2d 412); *Roebuck v. Payne,* 109 Ga. App. 525 (3), supra; *Lee v. Swann,* 111 Ga. App. 88, supra; *Saunders v. Vikers,* 116 Ga. App. 733, supra; *Young v. Kickliter,* 213 Ga. 42 (1) (96 SE2d 605); *Chattanooga Pub. Co. v. Fulton,* 215 Ga. 880, 883 (114 SE2d 138), and others similar, all requiring as a prerequisite to the imposing of liability under the negligent entrustment theory a showing of *actual* knowledge on the part of the owner that he was turning the vehicle over to an incompetent driver, or that the vehicle had some mechanical defect.

It was held in *Hines v. Bell,* 104 Ga. App. 76, supra, that "An allegation in the petition that the owner of the car had knowledge, or in the exercise of ordinary care should have known, that the driver whom he allowed to operate the car was a dangerous, reckless and incompetent driver of automobiles and had such a reputation is subject to demurrer. . . Under Georgia law actual knowledge of the incompetency is necessary to impose liability on the owner for negligent acts of a driver operating with the consent of the owner but not as his servant or agent." And see especially *Lee v. Swann,* 111 Ga. App. 88, supra. Cf. R. J. Reynolds Tobacco Co. v. Newby, 145 F2d 768.

Although the majority assert that their holding is rested on a matter of circumstantial evidence as showing actual knowledge, it seems to me that the real effect of the holding is to substitute constructive or imputed knowledge for actual knowledge as the test. It is to be noted too, that the circumstance upon which they most strongly rely is an *after the fact* one—a letter written by the father's insurance company on December

20, 1965, reciting that the son had been excluded from the coverage since January, 1962. The collision here involved occurred October 24, 1965, some two months before the letter was written. And although it is stated in that letter that the company "did not wish to provide coverage because of his previous driving record," that information was apparently not divulged to the father until the writing of this letter. The father positively asserts that he had no such knowledge.