44360. JONES et al. v. CLOUD, by Next Friend.

698

Argued April 9, 1969—Decided May 16, 1969.

*Anderson, Walker & Reichert, Albert P. Reichert, Mallory C. Atkinson, Jr.,* for appellants.

*S. Gus Jones,* for appellee.

Eberhardt, Judge. ■ In enumeration of errors 1 through 4 defendant Smith complains of the trial court's failure at various

stages of the litigation to grant judgment in his favor as a matter of law, contending that the evidence was insufficient to show that he had actual knowledge of Jones' incompetency.

■ "It is well established that a person who entrusts a motor vehicle to an incompetent driver who is likely to cause injury to others through its use is liable for any damages resulting therefrom, and this principle has generally been applied to cases where one entrusts a vehicle to another who he knows, or should know, is intoxicated or likely to become so while driving due to the fact that he is an excessive user of intoxicants." Annot., "Liability Based on Entrusting Automobile to One Who Is Intoxicated or Known to Be Excessive User of Intoxicants," 19 ALR3d 1175, 1179 (1968). Accord: 8 AmJur2d 130, Automobiles and Highway Traffic, § 576.

In this jurisdiction, "[k]nowledge of the driver's incompetency is an essential element of the rule which holds an owner liable for furnishing his automobile to an incompetent driver and such knowledge must be actual rather than constructive. *Hines v. Bell,* 104 Ga. App. 76 (3b) (120 SE2d 892); *Roebuck v. Payne,* 109 Ga. App. 525 (136 SE2d 399); *Lee v. Swann,* 111 Ga. App. 88 (140 SE2d 562); *Saunders v. Vikers,* 116 Ga. App. 733 (158 SE2d 324)." *Harris v. Smith,* 119 Ga. App. 306 (167 SE2d 198). However, as indicated in *Roebuck v. Payne,* 109 Ga. App. 525 (3), supra, and applied in *Harris v. Smith,* supra, actual knowledge can be demonstrated by circumstantial evidence.

The evidence adduced as to Smith's knowledge of Jones' excessive use of intoxicants consists of the testimony of Jones and Smith. Jones had been employed by Smith or the companies he owned for approximately six years, and approximately six months before the collision Smith had entrusted the truck to Jones to go back and forth to work and for personal missions. Smith testified that he knew Jones drank intoxicating beverages, but he did not know that he ever drove the truck while intoxicated. He specifically instructed Jones not to drive it while drinking and discussed this matter with him on two or more occasions. As to Jones' prior police record, Smith testified that he had never helped to get him out of jail on charges of being drunk or driving under the influence, the only occasion on which

he had participated being when Jones' wife had him locked up on a disorderly conduct charge.

Jones testified that at the time the truck was loaned to him Smith didn't know whether he had a drinking problem or not; that Smith didn't know he drove and drank, but he did know he drank because that's the reason he asked him not to drive the truck while he was drinking; that he had the general use of the truck but it was understood that it was not to be used for "pleasure use, honky-tonkying, or drinking in it."

Jones further testified: "Is it true that on December 25, 1965, that you were arrested for drunk? A. On December 25? Q. Yes, 1964. A. I couldn't recall the dates. I've been locked up on occasions for being drunk. Q. About 17 times? A. Somewhere—[Colloquy] Did you have a case of DUI against you for driving under the influence in 1957? A. 1957? I think I did, sir. Q. And isn't it true, Edward, that you drove a vehicle on numerous occasions while you were drinking but were not caught by any police officers prior to this collision? A. Say isn't it true? Q. Yes. Isn't it true? A. Well, I was caught twice for DUI. Q. *And did Mr. Smith ever come get you out of jail when you were in jail on any of these charges? While you were working for him?* A. On DUI? No, sir. Q. *The others he did.* A. *Yes, Sir.*"

After a colloquy and recess, Jones repudiated his statement that Smith got him out of jail on the drunk charges and testified that he thought Smith only got him out on one occasion on a disorderly conduct charge. Thus appears a contradiction in Jones' testimony as to a critical matter, for we are of the opinion that without Jones' testimony that Smith got him out of jail some seventeen times for drunkenness, the evidence would be insufficient to show Smith's actual knowledge of Jones' excessive use of intoxicants. *Marques v. Ross,* 105 Ga. App. 133, 138 (123 SE2d 412); R. J. Reynolds Tobacco Co. v. Newby, 145 F2d 768.

Jones' prior testimony stands, however, and the jurors were entitled to consider it; not, however, because of the rule that the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, inasmuch as Jones was called by the plaintiff

for cross examination when the testimony was given. Furthermore, the rule requiring the construction of a party's testimony against him does not apply as to Smith because as to his liability Jones was a witness, not a party. Cf. *Durden v. Maddox*, 73 Ga. App. 491, 493 (37 SE2d 219) (wife's testimony in family-purpose case where both husband and wife were defendants). Jones' testimony stands because, although contradictory, it is not to be rejected as having no probative value, as this circumstance goes to credibility and is a matter for the jury to weigh. *Randall v. State*, 73 Ga. App. 354, 368 (36 SE2d 450); *Reaves v. Columbus Electric &c. Co.*, 32 Ga. App. 140 (3) (122 SE 824); *Dodys v. State*, 73 Ga. App. 311 (3, 4) (36 SE2d 164); *Rowe v. State*, 68 Ga. App. 161 (2) (22 SE2d 210); *Wallis v. Watson*, 184 Ga. 38, 40 (190 SE 360); *Rogers v. Woods*, 66 Ga. App. 195, 197 (17 SE2d 283); *Engle v. Finch*, 37 Ga. App. 389 (4) (140 SE 632). "The rule is well established that the jury may believe a witness, not a party to the case, though his testimony is equivocal and contradictory. The jury may accept a part of it as true and reject a part as false, they being the judges of the weight and credit to be given the evidence." *Consolidated Tel. Co. v. Kincaid*, 94 Ga. App. 823, 826 (96 SE2d 322). Accord: *Strickland Motors Inc. v. State*, 81 Ga. App. 824, 827 (60 SE2d 254); *Grayson v. Yarbrough*, 103 Ga. App. 243, 246 (119 SE2d 41).

There being sufficient evidence which the jury could believe to show Smith's actual knowledge of Jones' excessive use of intoxicants, there was no error in overruling Smith's motions for directed verdict and for judgment n.o.v.

■ There is no merit in the contention that Smith could not be held for negligent entrustment for the reason that one of his corporations, rather than he, was the legal owner of the truck loaned to Jones. "The person who may be held liable for negligent entrusting of a vehicle to another who was intoxicated or known as a habitual drunkard is ordinarily the owner of the vehicle. Such liability, however, can also be imposed upon any other person who has control over the use of the vehicle and is negligent in entrusting it to another." Annot., 19 ALR3d 1175, 1180, supra. Since there is evidence that Smith had the

right to permit and prohibit the use of the truck, he could be held under the theory of negligent entrustment regardless of whether he was the legal owner.

■ The overruling of Smith's motion for summary judgment as to his liability for negligent entrustment, if error, was harmless since the case proceeded to trial and the evidence authorized the verdict against him on this theory. *Hill v. Willis*, 224 Ga. 263 (2) (161 SE2d 281).

Enumerations of error 1 through 4 are without merit.

■ Enumerations of error 11 through 13 complain that the court erred in allowing plaintiff's counsel to question Jones about his previous police record. The enumerations are based upon an objection made in the trial court to questions pertaining to instances of drunkenness not related to the occasion in question.

While it is well established that evidence as to prior occasions would not be admissible to prove negligence as to Jones on the occasion in question (see cases collected in *Willis v. Hill*, 116 Ga. App. 848, 862 (159 SE2d 145)), it is admissible to prove that Jones was an incompetent driver by virtue of his excessive use of intoxicants. See *Roper v. Scott*, 77 Ga. App. 120 (48 SE2d 118). The trial court, in admitting the testimony, limited it to this purpose, and no error appears in overruling the objection as made. Other grounds of objection, not urged when the evidence was offered on the trial, cannot be considered. *Middleton v. Waters*, 205 Ga. 847, 854 (55 SE2d 359); *Crider v. State*, 114 Ga. App. 522 (2) (151 SE2d 791).

Enumerations of error 11 through 13 are without merit.

■ Enumerations of error 5, 7, 8 and 9 complain of the trial court's failure to charge the doctrines of contributory negligence, comparative negligence and avoidance (*Code* § 105-603) to which timely exception was taken at the trial. In their responses to the complaint both defendants alleged: "*Third Defense:* In and about the premises the plaintiff, Carey J. Cloud, was not in the exercise of ordinary care and, by the exercise of ordinary care could have avoided any injury or damage to himself, and on account thereof, plaintiff is not entitled to recover against this defendant. *Fourth Defense:* The negligence of the plaintiff, Carey J. Cloud, equalled or preponderated over any act or omission on the part of this defendant in producing or

bringing about the occurrence complained of, and on account thereof, plaintiff is not entitled to recover against this defendant."

Defendants requested that the court charge, "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." *Code* § 105-603. Also requested was an excerpt from *Wright v. Concrete Co.*, 107 Ga. App. 190 (5) (129 SE2d 351), stating the circumstances under which a plaintiff will be barred from recovery because of failure to exercise ordinary care for his own safety.

■ Defendants did not request, however, that the court charge the jury in accordance with their pleaded defenses that the plaintiff could be barred from recovery under the comparative negligence doctrine, and it has been held in varying circumstances that if such a charge is desired, it should be properly and timely requested of the trial judge before error can be shown.[1] *Wrightsville & Tennille R. Co. v. Gornto*, 129 Ga. 204, 209 (58 SE 769); *Ga. Southern &c. R. Co. v. Thornton*, 144 Ga. 481 (5 b) (87 SE 388); *Alabama Great Southern R. Co. v. Brown*, 138 Ga. 328 (7) (75 SE 330).

It could perhaps be urged that these cases are not applicable inasmuch as the lower courts there gave a general charge as to comparative negligence or charged elsewhere as to the effect of the plaintiff's negligence or his failure to use ordinary care to avoid the consequences of the defendant's negligence, whereas here both avoidance and the bar of comparative negligence were expressly pleaded,[2] yet the charge of the court made no reference whatever to the diligence required of plaintiff. As stated in

---

[1] The same rule applies as to a charge on reducing or mitigating the damages under the comparative negligence doctrine. See, e.g., *Tucker v. Central of Ga. R. Co.*, 122 Ga. 387, 392 (50 SE 128); *Western & A. R. Co. v. Smith*, 145 Ga. 276, 281 (88 SE 983); *Savannah Electric Co. v. Crawford*, 130 Ga. 421, 424 (60 SE 1056). But see *Lamon v. Perry*, 33 Ga. App. 248, 252 (125 SE 907).

[2] Note that comparative negligence is no longer a matter which must be affirmatively pleaded in response to a pleading under CPA § 8 (c) (*Code Ann.* § 81A-108 (c)). Ga. L. 1967, pp. 226, 230.

*Western & A. R. Co. v. Jackson,* 113 Ga. 355 (2) (38 SE 820): ". . . a charge so worded as to convey to the jury the idea that they would be authorized to find for the plaintiff solely on account of the defendant's negligence, without regard to the question of the diligence of the deceased, is erroneous." And compare the rule that where the pleadings and the evidence raise the issue of whether or not the plaintiff by the exercise of ordinary care could have avoided the consequences of the defendant's negligence, it is the duty of the trial judge to charge the law on this subject notwithstanding the fact no request to so charge was made. See *Wells v. Steinek,* 49 Ga. App. 482 (1) (176 SE 42), stating the rule and collecting numerous authorities; *Law v. McIntyre,* 106 Ga. App. 723 (1) (127 SE2d 925), applying the rule.

Since we conclude in any event that it was error for the trial court to fail to charge *Code* § 105-603 on the doctrine of avoidance as requested, we make no ruling on enumerations of error 7 and 8, complaining of the trial court's failure to charge that plaintiff could be barred from recovery under the doctrine of comparative negligence. If on a subsequent trial the evidence so authorizes, defendants may make appropriate requests to charge on comparative negligence under § 17 (b) of the Appellate Practice Act (*Code Ann.* § 70-207 (b)) and thus avoid any collision with the holdings in *Wrightsville & Tennille R. Co. v. Gornto,* 129 Ga. 204, and the other cases cited supra and in note 1.

█ The collision in question occurred late at night at the intersection of Emery Highway and Center Street in Macon. At this point Emery Highway runs easterly and westerly and Center Street intersects at an angle from the southwest. Plaintiff was driving a Volkswagen bus in a westerly direction along Emery Highway, and Jones was traveling in the truck in a northeasterly direction along Center Street and was crossing Emery Highway at the time of the collision. The collision occurred in the Volkswagen bus' extreme right lane within six or eight feet of the northerly line of Emery Highway, the front of the Volkswagen bus striking the right side of the pick-up truck. Emery Highway as it approaches the intersection is straight and

on a downhill grade, leveling off at the intersection. At this point it is 48 feet wide from curb to curb, and Jones was almost completely across the intersection at the time of the collision. No skidmarks were left by either vehicle. The weather was fair and clear, and there were no other vehicles in the vicinity. There is evidence that in obedience to a stop sign Jones stopped the pick-up truck at the edge of Emery Highway and then proceeded across. Plaintiff and his companions were unable to recall anything about the collision due to amnesia.

While defendants concede that this evidence is sufficient to submit to the jury the question of whether Jones was negligent, they contend that the evidence also authorized the trial court to charge in accordance with their request that if the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. Code § 105-603. We agree, and hold that the court erred in failing to so charge. Jones was within 6 to 8 feet of being across Emery Highway, which is 48 feet wide, when the collision occurred. The intersection was within the clear visibility of plaintiff, and the jury would have been authorized to find that plaintiff was negligent in not keeping a proper lookout ahead. They could also have found that plaintiff might have avoided the collision by turning to the left or by applying his brakes. It must be a strong case, indeed, where it is not error for the trial court to fail to refer in his charge to the diligence required of plaintiff in a situation such as this.

Enumerations of error 5 and 9 are meritorious and require reversal.

■ Enumeration of error number 6, not being briefed or argued, is deemed abandoned.

■ Before the jury was selected counsel propounded to the panel the question: "If the evidence shows that Edward Jones, Jr. has plead guilty to driving under the influence of intoxicating liquors at the time of this accident, would that prejudice your mind and keep you from fairly considering the other evidence and rendering a true verdict *as to the cause or causes* of this particular automobile accident?" (Emphasis supplied.) Five members of the panel stood and answered in the affirmative.

■

They were then asked whether they would disregard the other evidence, and each asserted that he would not.

Error is enumerated on the failure of the court to excuse these jurors and replenish the panel with qualified ones. Appellee contends that no challenge for cause was made, that there was no motion to excuse the jurors or to replenish the panel. Appellants contend that this was done. The record before us indicates that after the jurors were thus interrogated counsel approached the bench and engaged in a colloquy with the court, but it was not reported. Following the colloquy the court made some remarks concerning the importance of an impartial jury in the trial of a case, ending with the statement, "I am going to let the jury go ahead as it is." We have asked the trial judge to certify whether there were motions to excuse the jurors, to replenish the panel or challenges for cause, and in response he has certified that he does not remember. For purposes of this appeal, therefore, we must assume that there were none. Cf. *Talley v. Sun Finance Co.*, 223 Ga. 419 (1) (156 SE2d 55); *Palmer v. Stevens*, 115 Ga. App. 398 (8) (154 SE2d 803); *Sancken Associates, Inc. v. Stokes*, 119 Ga. App. 282 (1) (166 SE2d 924). But since there is to be another trial in which this matter may arise again we direct attention to certain principles of law which we deem to be applicable to this situation.

In civil cases each party is entitled to a full panel of twenty-four competent and impartial jurors from which to strike a jury.[3] *Code* § 59-704. A challenge for favor is permissible. *Code Ann.* § 59-705. "The defendant had the right to a panel of twenty-four from which to strike—all twenty-four impartial men. 7 Ga. 139; 15 Ga. 39; [59 Ga.] 145. He was denied this right and was forced to exhaust four strikes upon two brothers and two cousins of the opposing parties who had an interest, a pecuniary interest, in the verdict and judgment they were pressing to obtain. The denial was erroneous and hurtful. A big part of the battle is the selection of the jury, and an impartial jury is the corner-stone of the fairness of trial by jury." *Melson v. Dickson,*

---

[3]For a history of jury trials in Georgia, see *DeLamar v. Dollar*, 128 Ga. 57 (57 SE 85).

63 Ga. 682, 686. It has been called "the hallmark of even-handed justice." Poller v. Columbia Broadcasting Co., 368 U. S. 464, 473 (82 SC 486, 7 LE2d 458). "A jury trial is a travesty unless the jurors are impartial." *Atlantic C. L. R. Co. v. Bunn,* 2 Ga. App. 305, 306 (58 SE 538). "Trial by jury necessarily means trial by an impartial jury." *Sullivan v. Padrosa,* 122 Ga. 338, 339 (50 SE 142). "Jurors should come to the consideration of a case . . . free from even a suspicion of prejudgment or fixed opinion upon any material fact in the issue to be tried,—as to the parties, the subject-matter, or the credibility of the witnesses." *Edwards v. Griner,* 42 Ga. App. 282 (1) (155 SE 789).

"Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. . . In the interest of fair trial, if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors, rather than in a too-technical observance of the letter of cases previously adjudicated and an attempt to bring the facts of other cases within some particular ruling." *Temples v. Central of Ga. R. Co.,* 15 Ga. App. 115, 119, 121 (82 SE 777), cited approvingly in *Cambron v. State,* 164 Ga. 111, 113 (137 SE 780).

"If a juror is conscious of the fact that his prejudice . . . is such that he can not . . . do justice . . . he is an incompetent juror, and would be compelled, if an honest man, to answer in the negative [as to whether he could make a fair verdict]." *Sullivan v. Padrosa,* 122 Ga. 338, 341, supra.

Where a juror stated in open court that he has been employed by one of the parties to the action and was "afraid that he could not do him justice," the Supreme Court held him to be incompetent. "He certainly had a prejudice or bias resting on his mind against the defendant, and it is as important in civil as in criminal cases that the rights of the parties should be determined by impartial jurors. Jurors on both the civil and criminal side of the court must be 'omni exceptione majores.' It is not just that a suitor's cause should be submitted for trial to his personal enemy, or one who will allow his prejudices to control him."

*McLaren v. Birdsong & Sledge*, 24 Ga. 265, 269. Cf. *American Cas. Co. v. Seckinger*, 108 Ga. App. 262 (1) (132 SE2d 794). "A disqualified juror, propter affectum, on a panel, is the same as no juror, and the panel from which to strike a jury is incomplete." *Felker v. Johnson*, 53 Ga. App. 390, 396 (186 SE 144). Cf. *Furman v. State*, 225 Ga. 253 (1).

The jurors, it would appear, were disqualified. As to what was required to be done by a party desiring to have them removed from the panel, see *Atlantic C. L. R. Co. v. Bunn*, 2 Ga. App. 305, 308, supra.

Parties should not be required to use their strikes in an effort to remove disqualified jurors. *Melson v. Dickson*, 63 Ga. 682, supra; *Pickering v. Wagnon*, 91 Ga. App. 610 (86 SE2d 621). Let there be no thumb on the scale when the jury weighs the evidence!

■ For the reasons stated in Division 3, enumeration of error 17, complaining of the denial of the respective motions for new trial, is meritorious. Since a new trial must be had and the evidence may not be the same as that now before us, we make no ruling on enumerations of error 14, 15 and 16, complaining that there was no evidence to authorize the giving of various charges on damages. *City of Jefferson v. Maddox*, 116 Ga. App. 51 (2) (156 SE2d 553).

*Judgments reversed. Bell, P. J., and Deen, J., concur.*